**VILLAGE OF BLODGETT,
Plaintiff–Respondent,**

v.

**Raymond RHYMER, Defendant–
Appellant,**

and

**Regina Rhymer, Mernie Naomi
Guthrie, and Donna Brown,
Trustee, Defendants.**

**No. SD 28964.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 25, 2009.

Richard K. Kuntze, Cape Girardeau, MO, for Appellant.

Amanda D. Cochran, Sikeston, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

The parties do not dispute the underlying facts in this case. At issue is whether the process Village of Blodgett ("Village") used in issuing and collecting on a special tax bill against property owned by Raymond Rhymer ("Appellant") complied with the requirements of Village's ordinances. Because it did not, we reverse.

## I. Facts and Procedural History

Appellant owned an abandoned church building located within Village's corporate limits (the "property"). In July 2005, a storm caused the roof of the church to cave in. About a month later, Village's attorney sent Appellant a letter notifying him that his property had become "accumulated with debris" and that this was "a violation of [Municipal Ordinance No.1994–

C]."[1] The letter stated Appellant had ten days "to remedy and remove the violations or appear before the Municipal Court of the Village of Blodgett to be heard and present evidence as to why you are not in violation of the Ordinance."

Approximately three months later, Appellant hired Dirt Cheap Dirt ("Dirt Cheap") to demolish and remove the church building. Dirt Cheap tore down the building and hauled off most of the debris, but left a "huge gap[ ]ing hole" and piles of loose brick where the basement of the building had been located.[2]

On January 12, 2006, Village's attorney sent Appellant another letter, this time referencing two different ordinances: "Municipal Ordinance No.2005–A and 2005–C" (respectively "2005–A" and "2005–C"). This letter stated that Appellant "tore down the church building, but the bricks and other debris remain on the property." It notified Appellant that Village had passed 2005–A (Unsafe Building Ordinance) and 2005–C (Nuisance Ordinance) on September 10, 2005, and stated it was clear that Appellant was "in direct violation of these ordinances." The letter indicated that it constituted a "final notice to remedy the unsafe condition of [Appellant's] property" and stated that Appellant "must clean up [his] lot completely within thirty (30) days from the date of this letter" or the Village would "pursue all remedies available to it under the municipal ordinances and under the statutes and laws of the State of Missouri."

Sometime after receiving this letter, Appellant contacted Village's mayor about coming to a board of trustees' meeting. The mayor "told him that if he wanted to come and address the trustees . . . that was fine." On February 4, 2006, Appellant appeared at Village's board of trustees' meeting and inquired as to whether putting a fence around his property would remedy his situation. On February 13, 2006, Village's attorney responded by sending Appellant a letter notifying him that his property was still in violation of both 2005–A and 2005–C and that Village was "not willing to risk the safety of its residence [sic] any longer." Village informed Appellant that he had "approximately two (2) weeks to remedy the unsafe condition of [his] property or the Village [would] go ahead and expend the funds to clean up the property and have a special tax bill issued against the property for the cost expended."

On March 20, 2006, Village's attorney sent Appellant a letter advising him that Village would "be moving forward with expending municipal funds to clean up the property and having a special tax bill issued against the property for the cost expended." The Village hired Dirt Cheap to fill in the basement and remove the remaining bricks and debris from Appellant's property. On April 25, 2006, Village

1. 1994–C stated in relevant part that "it shall be unlawful for any person to allow to accumulate upon property owned or possessed within the corporate limits of the Village of Blodgett, agricultural refuse of any type, piles of junk, trash, scrap metal, scrap lumber or any other garbage or detritus as the same is a potential breeding ground for vermin, and potentially injurious to the safety and health of the children and residents of the Village of Blodgett.... Any person accused of violations of the provisions of this ordinance shall be given notice of alledged [sic] violations which specifically delineate the accused violations and provide the alledged [sic] perpetrator with an opportunity to remedy such violations or appear to be heard, and to present evidence before the Municipal Court of the Village of Blodgett, not less than thirty (30) days from the date such notice was delivered."

2. Appellant had instructed Dirt Cheap to leave the bricks so Appellant could clean and sell them.

filed a special tax bill against Appellant's property in the amount of $5,360, the amount of its bill from Dirt Cheap plus a $24 recording fee. On July 12, 2007, Village's attorney sent Appellant a letter informing him that he had ten days to pay the special tax bill or Village would sue to collect it. Appellant did not pay the tax bill, and Village filed a petition in Scott County circuit court to collect it. The matter was tried to the court without a jury. The trial court thereafter entered a judgment in favor of Village and ordered that the property be sold at a public auction. Appellant now appeals that judgment.

## II. Standard of Review

 Our review of this case is governed by Rule 84.13.[3] We will affirm the judgment in a judge-tried case unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view all evidence in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428, 431 (Mo.App. S.D.2008). In a judge-tried case, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). In this case, no findings of fact were requested and none were issued.

## III. Discussion

 Appellant's sole point on appeal contends that 2005–A (Unsafe Building Ordinance) and 2005–C (Nuisance Ordinance) both "require notice to affected parties, a hearing, and a determination that a condition exists which requires remediation" and that Village failed to meet these procedural requirements.[4] Village contends it satisfied the procedural requirements of its ordinances because the letters sent to Appellant comprised multiple notices; Appellant had the opportunity to present evidence at the board of trustees meeting he attended; and Village sent Appellant several orders to clean up his property. As such, Village asserts it either met the nuisance abatement enforcement procedures required by its ordinances or had the statutory authority to abate the nuisance as an emergency case. We disagree with both contentions.

 Sections 67.398 and 67.400[5] are enabling statutes that permit a municipali-

---

3. Unless otherwise indicated, all references to rules are to Missouri Court Rules (2008) and all statutory references are to RSMo 2000.

4. We note that Appellant's point relied on is deficient in that it fails to state the legal reasons for the claim of reversible error. Rule 84.04(d)(1)(C) provides in relevant part that "[t]he point shall be in substantially the following form: 'The trial court erred in [*identify the challenged rule or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].'" Appellant's point provides: "**I. THE TRIAL COURT ERRED IN FINDING THAT A SPECIAL TAX BILL AND LIEN WERE PROPERLY ISSUED BY THE VILLAGE IN BLODGETT IN THAT**

**THE VILLAGE FAILED TO FOLLOW THE PROCEDURAL REQUIREMENTS OF ITS ORDINANCES FOR THE FINDING OF THE EXISTENCE OF A NUISANCE AND THE IMPOSITION OF A LIEN FOR THE COSTS INCURRED BY THE VILLAGE IN REMEDIATION.**" Appellant does not identify the procedural defect claimed in his point relied on, but because Village does not contest this deficiency and because we are able to interpret Appellant's contention sufficiently from the argument section of his brief, we exercise our discretion to decide the issue on its merits.

5. Section 67.410 requires that any ordinance enacted pursuant to section 67.400 shall, among other things: "(4) Provide that upon

ty (or village) to enact ordinances or orders requiring demolition and repair of buildings that adversely affect the health, safety, or welfare of the residents and that have been declared a public nuisance.[6] *City of Kansas City v. N.Y.–Kan. Bldg. Assocs.*, 96 S.W.3d 846, 859 (Mo.App. W.D. 2002). "Every citizen holds his property subject to the valid exercise of the police power." *State ex. rel. State Highway Comm'n v. Meier,* 388 S.W.2d 855, 859 (Mo. banc 1965). A city is a creature of the state and has only the police power conferred to it by the state. *City of Kansas City v. Jordan,* 174 S.W.3d 25, 41 (Mo.App. W.D.2005). What is contested here is not Village's authority to enact its ordinances, but whether Village actually complied with them.

Pursuant to sections 67.398 and 67.400, Village enacted 2005–A and 2005–C. 2005–A provides in relevant part:

### UNSAFE BUILDING ORDINANCE

. . . .

**Section 7. *Building Commissioner.***

The Mayor shall act as building commissioner under this ordinance.[ [7] ]

**Section 8. *Duties of the Building Commissioner.***

failure to commence work of reconditioning or demolition within the time specified or upon failure to proceed continuously with the work without unnecessary delay, *the building commissioner or designated officer or officers shall call and have a full and adequate hearing upon the matter, giving the affected parties at least ten days' written notice of the hearing."* (emphasis added).

6. Village correctly points out that sections 80.090 and 71.780 also grant Village authority to enact ordinances to remove nuisances. Section 80.090 provides in relevant part that "board of trustees shall have power: (1) To pass bylaws and ordinances to prevent and remove nuisances." Section 71.780 states in

The building commissioner shall have the power pursuant to this ordinance to:

. . . .

2) Upon receipt of a report from the building inspector indicating failure by the owner ... to commence work of reconditioning or demolition within the time specified by this ordinance or upon failure to proceed continuously with work without unnecessary delay, *the building commissioner shall hold a hearing giving the affected parties full and adequate hearing on the matter.*

Written notice, either by personal service or by certified mail, return receipt requested, or by publication for two (2) successive weeks, in a newspaper qualified to publish legal notices, at least ten (10) days in advance of a hearing date, to the owner ... to appear before the building commissioner on the date specified in the notice to show cause why the building or structure reported to be a dangerous building should not be repaired, vacated or demolished in accordance with the statement of particulars set forth in the building inspector's notice as provided herein.

Any party may be represented by counsel and all parties shall have an opportunity to be heard.

pertinent part that "nuisances may be suppressed by the ordinances of said cities, or by such act or order as the charters of said cities authorize them to adopt. If the nuisance is suppressed within the city limits, the expense for abating the same may be assessed against the owner or occupant of the property, and against the property on which said nuisance is committed, and a special tax bill may be issued against said property for said expenses."

7. Despite this declaration in the ordinance, Village's clerk testified that Village did not have a *building commissioner.*

3) Make written findings of fact from the evidence offered at said hearing as to whether or not the building in question is a dangerous building within the terms of Section 2.

4) If the evidence supports a finding based upon competent and substantial evidence that the building or structure is a dangerous building, the building commissioner shall issue an order based upon its findings of fact commanding the owner, occupant, mortgagee, lessee, agent or other person(s) having an interest in said building as shown by the land records of the Recorder of Deeds of Scott County, to repair, vacate or demolish any building found to be a dangerous building and to clean up the property, provided that any person so notified, shall have the privilege of either repairing or vacating and repairing said building, if such repair will comply with the ordinances of this Village or the owner or any person having an interest in said building as shown by the land records of the Recorder of Deeds of Scott County, may vacate and demolish said dangerous building at his own risk to prevent the acquiring by the Village of the lien against the land where the dangerous building stands. If the evidence does not support a finding that a building or structure is a dangerous building, no order shall be issued.

5) If the owner, occupant, mortgagee or lessee fails to comply with the order within thirty (30) days, the building commissioner shall cause such building or structure to be repaired, vacated or demolished and the property cleaned up as the facts may warrant; and the building commissioner shall certify the cost to the work borne by the Village for such repair, vacation or demolition or cleaned up to the Village clerk as a special assessment represented by a special tax bill against the real property affected; said tax bill shall be a lien upon said property and shall be deemed a personal debt against the property owner(s) unless the building or structure is demolished, secured or repaired by a contractor pursuant to an order issued by the Village and such contractor files a mechanic's lien against the property where the dangerous building is located. The contractor may enforce this lien as provided in Sections 429.010 to 429.360 Revised Statutes of Missouri. Except as provided in subsection 6 of this section, at the request of the taxpayer this special tax bill may be paid in installments over a period of not more than ten (10) years; said assessment shall bear interest at the rate of ten (10%) percent per annum until paid.

. . . .

## Section 10. *Emergencies.*

In cases where it reasonably appears that there is immediate danger to the health, life or safety of any person unless a dangerous building, as defined herein, is immediately repaired, vacated or demolished and the property is cleaned up, the building inspector shall report such facts to the building commissioner and the building commissioner may cause the immediate repair, vacation or demolition of such dangerous building and clean up the property. The costs of such emergency repair, vacation or demolition of such dangerous building shall be collected in the same manner as provided in Section 7(5).

(emphasis added). 2005–C contains the following relevant provisions:

### NUISANCE ORDINANCE

. . . .

## Section 4. *Authority to abate emergency cases.*

In cases where it reasonably appears that there is an immediate danger to the health, safety or welfare of the public, due to the existence of a nuisance, the Mayor shall have the authority to order a village official to immediately abate the nuisance in an appropriate manner.

**Section 5.** *Abatement; procedure generally.*

Whenever the Board of Trustees receives notification that a nuisance may exist, it shall proceed as follows:

(1) It shall investigate the same. The Trustees may order any person who has caused or is maintaining the nuisance to appear before the Trustees at such time and place as the Trustees may direct to show cause, if any, why that person should not abate the nuisance. Every person required to appear before the Trustees shall have at least ten (10) days' notice thereof.

(2) Such notice shall be signed by the Village Clerk and shall be served upon that person by delivering a copy thereof to the person, or by leaving a copy at his residence with some member of the family or household over fifteen (15) years of age, or upon any corporation by delivering the copy thereof to the president or to any other officer at any business office of the corporation within the village. If the notice cannot be given for the reason that the person named in the notice or his agent cannot be found in the village, of which fact the return upon such notice of the Clerk serving the same shall be conclusive evidence, such notice shall be published in The Standard Democrat for three (3) consecutive days giving at least ten (10) days' notice from the final publication date of the time fixed for the parties to appear before the Trustees.

(3) If after hearing all the evidence the Board of Trustees determines that a nuisance exists, it may direct a village official to order the person to abate the nuisance within ten (10) days or within such other time as the Trustee may deem reasonable. Such order shall be served in the manner provided in this section for service of the order to show cause. The order may further provide that the appropriate village official be directed to abate the nuisance, if the order is not obeyed within the time period set by the Trustees, and that a special tax bill and/or addition to the annual real estate tax bill for the property be issued for the costs of abating the nuisance.

(4) If the order has not been obeyed within the time period set by the Trustees, the appropriate village official shall proceed to abate the nuisance in the manner provided by the order of the Trustees. The cost of the abatement, if ordered by the Trustees, shall be certified to the Village Clerk who shall cause the certified cost to be included in a special tax bill or added to the annual real estate tax bill for the property, at the option of the Village Clerk. The certified cost added to the annual real estate tax bill shall be collected by the official collecting taxes in the same manner and procedure for collecting real estate taxes. If the certified cost is not paid, the tax bill shall be considered delinquent, and the collection of the delinquent bill shall be governed by the laws governing delinquent and back taxes. In either case, the tax bill from the date of its issuance shall also be deemed a personal debt against the owner(s) of the property, and the village may maintain a separate civil action to recover these costs, plus the costs to bring such action, including attorney's fees.

The two ordinances Village said it was relying on contain provisions that are in-

consistent with one another, both as to the notice required (personal service, certified mail, or publication under 2005–A; personal service or publication under 2005–C) and as to what entity would be conducting the necessary hearing (the building commissioner under 2005–A; the Board of Trustees under 2005–C). In any event, we do not need to determine which ordinance's notice and hearing provisions actually applied because no hearing was ever scheduled for Appellant. Rather, Appellant took affirmative steps to attend a regular meeting of the board of trustees. It is unclear from the record what type of process Appellant received there, but what is clear is that Village never provided Appellant with the type of hearing required by either of its ordinances.

 While Village's main contention is that its actions met the requirements of both 2005–C and 2005–A, it also asserts that it was not required to comply with them because it had the authority to make an immediate repair in an emergency nuisance situation. This alternative argument is not supported by substantial and competent evidence. Village never treated Appellant's alleged nuisance as an emergency case. Village originally gave Appellant thirty days to clean up his property, then later granted him an additional two weeks' extension. There is simply no evidence in the record to support Village's contention that it treated Appellant's property as an "immediate danger to the health, safety or welfare of the public."

"If an extraordinary or emergency situation does not exist, a hearing must be provided before a deprivation of property occurs and a subsequent hearing will not satisfy due process." *Jordan,* 174 S.W.3d at 43. Once Village decided to enact the ordinances at issue and inform Appellant it would be enforcing them, it could not ignore the notice and hearing provisions within those ordinances and proceed in a different manner. Appellant is correct in pointing out that Village did not provide him with the hearing its ordinances required. As no valid tax lien could issue until after the required hearing was held, the judgment of the circuit court is reversed.

PARRISH and RAHMEYER, JJ., concur.