**DELONG PLUMBING TWO, INC.,**
**Plaintiff–Respondent,**

v.

**3050 N. KENWOOD LLC,**
**Defendant–Appellant.**

**No. SD 29589.**

Missouri Court of Appeals,
Southern District,
Division One.

March 8, 2010.

Richard L. Rollings, Jr., Camdenton, MO, for Appellant.

· J. Matthew Miller and John R. Lightner, Springfield, MO, for Respondent.

DON E. BURRELL, Judge.

DeLong Plumbing Two, Inc. ("DeLong") performed certain plumbing work on property owned by 3050 N. Kenwood, LLC ("Appellant"). When Appellant refused to pay for the work, DeLong sued Appellant for breach of contract and in quantum meruit. Appellant responded with an affirmative defense and counterclaim that alleged it suffered damages due to De-Long's negligence in performing the repairs. Following a bench trial on October 17, 2008, the trial court entered a judgment in favor of DeLong. Appellant now appeals that judgment, asserting four points of alleged trial court error. Finding no merit in any of Appellant's points, we affirm the judgment of the trial court.

## Facts

Appellant owned and operated a hotel in Springfield, Missouri known as the Budget Lodge ("the Lodge"). DeLong provides residential and commercial plumbing services. In July of 2006, Appellant, through the Lodge's manager ("Nelson"), hired De-Long to perform a backflow test on the Lodge as required by the city of Springfield. DeLong sent one of its employees, Donnie Shetler ("Shetler"), to do the backflow test. While he was at the Lodge, Shetler observed a leak in a four-inch pipe inside the building that "was leaking down on compressors and the electronics on a chiller." Appellant subsequently hired De-Long to repair this leak.

Shetler, Tom Pflumm ("Pflumm"), another DeLong employee, Larry Hall (Appellant's sole and managing member), and Nelson all participated in a conference call discussing the repair job. To perform the repair, the main water supply to the Lodge would have to be interrupted. The Lodge was occupied by guests who would be inconvenienced by any interruption in the

water supply. During the conference call, it was decided that after the pipe over the chiller had been repaired, four hours of drying time would need to elapse before the water supply could be turned back on. Shetler indicated that the agreed-upon four hours of drying time was consistent with his experience. Pflumm, the DeLong employee assigned to complete the repair, also believed that four hours of drying time would be sufficient.

The next day, Pflumm arrived at the Lodge at approximately 6:45 a.m. and planned to begin his work at 7:00 a.m. Nelson, however, did not allow Pflumm to begin the repair until approximately 9:00 a.m. because the "cleaning ladies were running a little behind, and they still needed water." Once Pflumm was allowed to begin, the repair took about 15 to 30 minutes. Before 11:00 a.m., well before the agreed-upon four hours of drying time would have expired, Nelson came to Pflumm and told him the water would need to be turned back on by 11:00 a.m. because the Lodge "just couldn't allow it [the full four hours of drying time] because there were people checking out and people checking in, and 11:00 was the time to get out and 11:00 was the time to come in."

Pflumm wanted the additional dry time that had been previously agreed upon, but Nelson, "the man in charge," wanted him to turn the water back on. Pflumm did so because he was "not supposed to refuse a customer, is what [he] was taught." Pflumm also testified that he still felt the repair would work because he had previously done the same type of repair with only thirty minutes of dry time and it had worked. To provide additional stability, Pflumm also installed temporary "riser" clamps at the location of the repair.

At 11:00 a.m., Pflumm opened the gate valve to the main water supply "a turn and a half to two turns" (out of a total of eleven revolutions necessary to fully open the valve) and let the water start flowing back into the Lodge. Pflumm then began gradually turning off faucets he had previously opened in the Lodge as water began to flow through them. Pflumm was engaging in this gradual process to avoid what he called a "water hammer" event, which he described as a "big ball of rush" coming through the pipes.

After about 15 to 20 minutes of gradually increasing the water pressure, Pflumm completed his opening of the main water supply. At that point, one of the couplings on the newly repaired pipe suddenly failed. As Pflumm was "bleeding air out of the lines" he "heard the pop, and that's when the coupling blew apart." He then ran to the other room and reached for the butterfly valve to turn off the water supply. The butterfly valve appeared worn and had "corrosion all over it." As he "did two clicks[,]" turning the butterfly valve, a failure occurred in the male coupling going into the butterfly valve at the point where it was threaded. The butterfly valve exploded in Pflumm's face, striking him in the eye. Pflumm had been closing the butterfly valve slowly because it was difficult to close and to avoid a water hammer event.

Prior to the time of these events, several repairs on the main water supply pipe that runs beneath the Lodge's parking lot had been made using the wrong type of couplings. In a similar manner, the pipe going into the butterfly valve that exploded was threaded Schedule 40, which is weaker than the unthreaded pipe typically used for such an application because the thickness of the pipe is decreased where the threads are located. Following the explosion of the butterfly valve, DeLong installed a temporary water line to the Lodge and later repaired the main water supply line beneath the parking lot. DeLong's

suit sought recovery for these repairs but did not include any charge for the repair of the line over the chiller. Appellant's answer and counterclaim asserted that the billed repairs were only necessary because of DeLong's negligence in repairing the line over the chiller.

The trial court entered its judgment on December 9, 2008, finding DeLong was entitled to the total value of its invoices in the amount of $18,177.15, and Appellant was entitled to a set-off of $2,223.10 for the cost to repair an electrical line DeLong had severed during its replacement of the Lodge's permanent water line.

### Standard of Review

 This court's review is governed by Rule 84.13 [1] and the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

> We will affirm the judgment in a judge-tried case unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. [*Murphy*, 536 S.W.2d at 32]. We view all evidence in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Payroll Advance, Inc. v. Yates*, 270 S.W.3d 428, 431 (Mo. App. S.D.2008). In a judge-tried case, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

*Village of Blodgett v. Rhymer*, 279 S.W.3d 242, 245 (Mo.App. S.D.2009). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32. We will defer "to the trial court as the finder of fact in determinations as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence[.]" *Business Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). "The trial court may believe all, part, or none of any witness's testimony." *Ortmann v. Dace Homes, Inc.*, 86 S.W.3d 86, 89 (Mo. App. E.D.2002).

### Analysis

 All of Appellant's points on appeal are defective in that they fail to state the legal reason why the rulings they challenge were erroneous or why, in the context of the case, those legal reasons support the reversible error claimed. *See* Rule 84.04(d). Although deficient points preserve nothing for appellate review, we may choose to review them if the deficiency does not impede a disposition on the merits. *Bolz v. Hatfield*, 41 S.W.3d 566, 571 (Mo.App. S.D.2001). Believing we understand Appellant's complaints, we will review them *ex gratia*.

 Appellant alleges in its first point that the trial court erred "in finding that representative's [sic] of [Appellant] 'demanded' or 'pressured' [Pflumm] to turn the water back on at 11:00 a.m., because [DeLong] did not present any evidence that representatives of [Appellant] demanded the water be turned back on[.]" The trial court's finding on this issue was as follows.

> [T]o the extent that [Appellant] alleges that the original repair failed for inadequate dry time, there was evidence that [Appellant]'s representative pressured Mr. Pflumm to turn the water back on after a shorter than agreed to dry time. Mr. Pflumm was placed in an

---

1. All rule references are to Missouri Court Rules (2009).

untenable position. Rely on his own judgment that 2 hours 'might' be enough dry time and turn the water back on at the direction of [Appellant], or refuse to turn the water on and face business interruption damages because the Budget Lodge was full of residents. The Court does not find that Mr. Pflumm's attempt to make the original repair in that manner constituted negligence.

■ Although it is not contained in Appellant's point relied on, the argument that follows it reveals that Appellant's assertion is that this factual finding was not supported by substantial evidence.[2] "Substantial evidence is that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inferences which can be drawn from it, and deferring all issues of weight and credibility, to the fact finder." *Fujita v. Jeffries*, 714 S.W.2d 202, 206 (Mo.App. E.D.1986).

Pflumm testified that he unsuccessfully attempted to talk Nelson into allowing additional dry-time for the repair. Pflumm testified that it was Nelson's decision to turn the water back on before the expiration of the previously agreed-upon drying time, and that he was taught not to refuse a customer. Pflumm's testimony constituted substantial evidence supporting the trial court's finding that DeLong was pressured by Appellant into turning the water back on at 11:00 a.m. Point I is denied.[3]

■ Appellant's second point alleges the trial court erred "in concluding that [Pflumm]'s original repair over the chiller was not done negligently, because there was no substantial evidence that a dry time of less than two hours was sufficient and [Pflumm] turned the water on with less than two hours of dry time[.]"

■ This assertion stands the applicable burden of proof upon its head. The burden of proving negligence rests on the party asserting it, *Martin v. Durham*, 933 S.W.2d 921, 925 (Mo.App. W.D.1996), and "[t]he party asserting an affirmative defense bears the burden of proof." *Ozark Air Lines, Inc. v. Valley Oil Co.*, 239 S.W.3d 140, 145 (Mo.App. W.D.2007) (quoting *Kansas City Power & Light Co. v. Bibb & Assocs., Inc.*, 197 S.W.3d 147, 156 (Mo.App. W.D.2006)). Appellant was the party asserting DeLong's negligence and it therefore bore the burden of "proving that [DeLong] was negligent and that the injuries directly resulted from [its] negligence." *See Martin*, 933 S.W.2d at 925. As a result, "a verdict in [DeLong]'s favor need not be supported by any evidence." *See Id.*

Although it was under no obligation to do so, DeLong did present such evidence. Pflumm testified that "in the past [he'd] really had it set up in 30 minutes and work." The trial court was permitted to believe that testimony. *See Business Men's Assurance Co., supra.* Appellant alleges that Pflumm's testimony was contradictory in that he wanted twenty-four hours of drying time, tried to get eight hours of dry time, agreed on four hours of dry time, and had a past repair successfully set up in 30 minutes. This testimony

2. Appellant also claimed the finding was against the weight of the evidence, but cites no evidence against which it believed Pflumm's testimony should have been weighed.

3. The more fundamental defect in Appellant's first point is that we are never informed as to why this factual finding matters. As best we can discern, it is because it is one of the reasons why the trial court concluded that DeLong was not negligent in its repair of the pipe above the chiller. Because Appellant's second point directly refers to the trial court's findings regarding negligence, we will address the matter in our analysis of that point.

was not inherently contradictory: it simply set forth a range of times encompassing what was ideal, what was practical, and what was possible. Point II is denied.

■ Appellant's third point alleges "[t]he trial court erred in concluding that any negligence with respect to the initial repair of the leak over the chiller was irrelevant since [DeLong] did not charge [Appellant] for that repair, because the negligent repair of the leak over the chiller was the cause in fact and proximate cause of the failure of the pipe under the parking lot and the coupling going into the butterfly valve. . . ." The challenged finding of the trial court was that

> [t]o the extent [Appellant] is arguing that [DeLong] was negligent in its original repair of the coupling over the chiller[,] which [ ] ultimately leaked, the Court finds that [DeLong] never charged for that repair and ultimately fixed the coupling repair so that it did not leak.

The trial court did not find that any negligence by DeLong was "irrelevant" to the additional damage caused by the pipe failures. To the contrary, the trial court explicitly stated in its judgment that DeLong was *not negligent* in its repair of the leak over the chiller. Without a finding of negligence, the question of proximate cause is a nullity. Point III is denied.

■ Appellant's fourth point alleges that "[t]he trial court erred in finding that [Pflumm] did not close the butterfly valve in a negligent or inappropriate manner, that there are numerous explanations for the failure of the butterfly valve and the pipe under the parking lot, and that the prior repairs were a significant contributing cause of the failures[.]" In the argu-

ment section following this point, Appellant asks, "What made the coupling going into the butterfly valve and the pipe under the parking lot fail? [DeLong] did not present any evidence that these defects did, or even could, cause the failures that occurred in the absence of the negligent closure of the butterfly valve." Appellant's fourth point contains the same fatal defect mentioned above—it improperly attempts to place on DeLong the burden of proving that it was not negligent.

DeLong was not required to prove that the butterfly valve's failure resulted from something other than Pflumm's negligence. Rather, Appellant had the burden of proving that Pflumm's conduct in closing the butterfly valve was negligent. In any event, DeLong presented evidence on the steps Pflumm took to avoid the occurrence of a water hammer event. This constituted substantial evidence supporting the trial court's affirmative finding that Pflumm's conduct in closing the butterfly valve was not negligent. To the extent that Appellant presented evidence to the contrary, the court was free to disbelieve it. *Bryan v. Garrison*, 187 S.W.3d 900, 906 (Mo.App. W.D.2006).

Appellant's fourth point is also denied, and the judgment is affirmed.[4]

BARNEY, P.J., and LYNCH, J., Concur.

---

4. Because we find no error in the trial court's judgment in favor of DeLong on its contract claim, we do not need to consider whether the trial court's judgment could also have been affirmed based on DeLong's quantum meruit claim.