BRIAR ROAD, L.L.C., Appellant,

v.

LEZAH STENGER HOMES, INC., Respondent.

No. 28592.

Missouri Court of Appeals,
Southern District,
Division 1.

April 1, 2008.

Motion for Rehearing or Transfer to Supreme Court Denied April 23, 2008.

Stuart H. King, McDonald Hosmer King & Royce, P.C., Springfield, for appellant.

M. Scott Montgomery, Springfield, for respondent.

JOHN E. PARRISH, Presiding Judge.

Briar Road, L.L.C., (plaintiff) sought a judgment declaring that it, as assignee of George W. Hull and Minnie J. Hull, had the right to exercise an option to purchase certain real estate and an order for Lezah Stenger Homes, Inc., formerly Stenger Homes, Inc., (defendant) to convey the real estate in question and perform other requirements prescribed by a certain agreement between the Hulls and plaintiff. Summary judgment was entered denying plaintiff's request and declaring "that Plaintiff has no interest, right, or title to the premises at issue." This court reverses and remands.

George W. Hull and Minnie J. Hull leased real estate from defendant. Their lease agreement included an option to purchase the leased property. The real estate was located in Spring Creek Phase VI, a subdivision in Greene County, Missouri. A residence is located on the leased property. The Hulls' initial lease commenced April 30, 1993. A second agreement that included an option to purchase was entered into for a term that commenced November 1, 1997, and ran through October 31, 1999. Third and fourth lease agreements with options to purchase ran from November 1, 1999, through October 31, 2001, and from October 31, 2001, through October 31, 2003.

A letter was sent on behalf of defendant to the Hulls dated August 13, 2003, by which defendant extended the lease that was to expire October 31, 2003, "on a month to month basis." The letter advised the Hulls that "[a]ll other terms and conditions of the lease, including your option to purchase, shall be on the same terms as the existing lease."

Paragraph 15 of the lease that was in effect when extended "on a month to month basis" provides as follows.

*Option to Purchase.* It is mutually agreed that [the Hulls] shall have the option of purchasing the Premises during the term of this Agreement. [The Hulls] paid [defendant] a nonrefundable option payment of $50,000 upon the execution of the first lease for the Premises in 1993 and a $2,000 nonrefundable option payment upon the execution of the second lease for the Premises in October 1997 and a $2,000 nonrefundable option payment upon the execution of the third lease for the premises in October 1999. [The Hulls] shall pay [defendant] a further nonrefundable option payment of two thousand dollars ($2,000) in cash at the execution of this agreement, the receipt of which [defendant] acknowledges. So long as [the Hulls] [are] not in default, the option may be exercised by [the Hulls] at any time during the Term of this Agreement by giving [defendant] written notice. The purchase price shall be One Hundred Ninety Eight Thousand Five Hundred and 00/100 Dollars ($198,500.00). If the option is exercised, the following terms shall apply:

(a) Within ten (10) days after exercise of this option, [defendant] shall furnish to [the Hulls] a title insurance commitment from Great American Ti-

tle Co. showing merchantable title in [defendant] in accordance with the Title Examination Standards of the Missouri Bar, free and clear of encumbrances except a first deed of trust which will be paid off at the time of closing. [The Hulls] shall have 10 days after receipt of the title commitment to communicate any title requirements to [defendant] and [defendant] shall comply with those requirements prior to closing.

(b) The Premises shall be conveyed by general warranty deed free of liens and encumbrances, except for the publicly recorded Covenants and Restrictions applicable to Spring Creek and any publicly recorded easements.

(c) The Closing shall be on or before forty-five (45) days after the exercise of the option.

(d) The Purchase Price of $198,500 shall be paid by [the Hulls] receiving full credit for the $56,000 nonrefundable option payments and the balance of $142,500 shall be paid to [defendant] in case, at closing.

(e) If this option is not exercised by notice in writing prior to the expiration of the Term of this Agreement, the option shall expire and [the Hulls] shall deliver peaceful possession of the Premises in as good condition as the Premises were received upon completion of construction, usual wear and tear and unavoidable casualty excepted. In the event [the Hulls] [do] not exercise the option to purchase prior to the end of the term of this lease, this lease shall terminate, [defendant] shall retain the $56,000 in nonrefundable option payments and [the Hulls] shall have no further rights under this Agreement.

On November 4, 2005, the Hulls executed a document that states as follows.

### ASSIGNMENT OF RIGHTS

**THIS ASSIGNMENT** is made on this *4th* day of November, 2005[,] by [the Hulls], ("Assignors"), in favor of [plaintiff], a Missouri limited liability Company, ("Assignee").

### WITNESSETH

That Assignors, for good and valuable consideration to them paid, the sufficiency of which is acknowledged, do hereby sell, assign, transfer, set over, and deliver unto Assignee all of Assignors' right, title and interest in the following:

1. The option to purchase the real property located at 2250 East Briar Road, Springfield, Greene County, Missouri, (the "Property"), said option to purchase being more fully described in the Lease Agreement With Option to Purchase by and between Assignors and [defendant] as extended by [defendant] on August 13, 2003. Said Lease Agreement With Option to Purchase and the agreement to extend the same are attached hereto and incorporated herein by reference.

To have and to hold said personal property unto Assignee, and unto its successors and assigns forever.

**IN WITNESS WHEREOF,** Assignors set their hand on the day and year first above written.

By letter dated March 24, 2006, attorneys for the Hulls sent a letter to defendant stating that the Hulls were giving notice "of their intent to exercise their option to purchase the Property in accordance with the terms of their Lease Agreement With Option to Purchase, as extended by [defendant's] correspondence of August 13, 2003." The letter identified "the Property" as "2250 East Briar, Springfield, Missouri." The letter contin-

ued, "[The Hulls] have entered into a contract for the sale of the Property with the closing tentatively scheduled for April 14, at 11:00 a.m. at Great American Title, 620 West Republic Road." The letter further advised defendant, "If the scheduled closing time or place is inconvenient in any way or if you have any other questions or concerns, please feel free to contact us. Otherwise, our clients very much appreciate your cooperation."

By letter dated April 6, 2006, to the Hulls' attorney, defendant asserted that the Lease Agreement was not assignable without the written consent of defendant; that defendant did not consent to the assignment and would not, "under any circumstances, deed the property to anyone other than [the Hulls]." By letter dated April 20, 2006, defendant advised the Hulls' attorney "that the Lease Agreement with Option To Purchase dated October 31, 2003 and extended on a month to month basis effective 10/31/03 on 2250 E. Briar with [the Hulls] is hereby terminated effective May 31, 2006." Thereafter, by letter dated April 27, 2006, plaintiff's attorney notified defendant, on behalf of plaintiff, that plaintiff was prepared to complete the transaction prior to May 31, 2006. The letter further stated:

We do not believe the consent of [defendant] is required to [the Hulls'] assignment of their option to purchase. Further, even if consent is required, we do not believe it can reasonably be withheld. The only reason we have ever heard for [defendant's] refusal to honor the assignment to [plaintiff] is that it could conceivably be construed as cooperation or collusion to avoid a claim of the Attorney General's Office. With all due respect, [plaintiff] has never asked for any collusion or raised any objection to you notifying anybody you desire about the assignment. Further, as you know, the Attorney General's Office is fully aware of the assignment and agreed to raise no objection to the same. In light of the foregoing, please advise as to whether [defendant] continues to deny the assignment and, if so, on what basis.

The reference to action by the attorney general was directed to criminal charges that were pending against George W. Hull from January 2005 until May 2006. Hull was charged with four counts of offering or selling unregistered securities. He was found guilty following a bench trial February 8, 2006. A docket entry from the criminal case, dated "05/01/06" states, "4/21/06 STATE BY ASSISTANT ATTORNEY GENERAL RON CARRIER. DEFT W/ATTY J. APPELQUIST." That entry is followed by another entry that assessed punishment and imposed sentence.

The trial court's judgment in this case states what it characterizes as "material facts" it declares "are uncontroverted." These are followed by "conclusions of law." The conclusions of law declare:

Three independent reasons support the granting of summary judgment in favor of Defendant. They are listed as follows:

1. Plaintiff violated the agreement by failing to obtain the Landlord's written consent to the assignment; and

2. No reasonable trier of fact could find that Defendant must consent to the assignment to aid George Hull in the conveyance of and manipulation of the ownership of his assets; and

3. A limited liability company may not receive an interest in Missouri real estate until it is formed.

The trial court stated, "Each of these reasons, standing alone, is sufficient to grant summary judgment to Defendant."

Plaintiff filed what was denominated "Counter–Motion for Summary Judgment" that the trial court denied. Point I argues that the trial court erred in denying plaintiff's counter-motion for summary judgment and in entering judgment against plaintiff because "there is no genuine issue of fact in that the Hulls were tenants of the Property for a term exceeding two years and under Missouri common law and Missouri Revised Statutes Section 441.030, tenants for a term exceeding two years may assign the lease agreement without the consent of the landlord absent language to the contrary within the lease agreement and the Agreement did not require [defendant's] consent to the assignment of the Agreement and/or the option to purchase, but rather, required [defendant's] consent only to the assignment of the 'Premises,' which term was limited by definition in the Agreement to mean the described real property."

■ "Denial of a motion for summary judgment does not present an appealable issue." *Bolivar Insulation Co. v. Bella Pointe Development, L.L.C.,* 166 S.W.3d 610, 614 (Mo.App.2005), citing *Nodaway Valley Bank v. E.L. Crawford Const., Inc.,* 126 S.W.3d 820, 824 (Mo.App.2004), and *Shelter Mut. Ins. Co. v. DeShazo,* 955 S.W.2d 234, 238 (Mo.App.1997). Point I is denied.

Points II and III claim the trial court erred in granting defendant's motion for summary judgment. This court's review of a grant of summary judgment is essentially de novo. *Shelter Mut. Ins. Co. v. State Farm Mut. Auto Ins. Co.,* 223 S.W.3d 905 (Mo.App.2007).

Appellate courts, when considering appeals from summary judgment, review the record in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 244 (Mo.banc 1984). The party against whom judgment was entered is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo.banc 1993). Because the propriety of summary judgment is an issue of law, the trial court's judgment is reviewed on the basis of the record submitted and the law, and appellate courts need not defer to the trial court's order granting summary judgment. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993). Summary judgment is granted only where no genuine issue of material fact exists, and judgment is proper as a matter of law. Rule 74.04(c)(3) [1]; *Rodgers v. Czamanske,* 862 S.W.2d 453, 457 (Mo.App.1993). A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Finance Corp.,* 854 S.W.2d at 382.

*Cash v. Benward,* 873 S.W.2d 913, 915–16 (Mo.App.1994). *See also Wey v. Dyno Nobel, Inc.,* 81 S.W.3d 208, 210 (Mo.App. 2002).

■ Point II contends the trial court erred in granting defendant's motion for summary judgment because the motion "failed to establish that [defendant] was entitled to judgment as a matter of law and/or that there was no genuine issue of fact in that, assuming *arguendo* that [defendant's] written consent was necessary to the Hulls' assignment of the option to purchase, genuine issues of fact exist as to

---

1. This requirement appears in the current Missouri Rules of Civil Procedure as Rule 74.04(c)(6).

whether [defendant] unreasonably withheld its consent in that pending claims or criminal charges against solely George W. Hull and/or telephone call(s) from counsel for the State of Missouri inquiring about the ownership of the Property do not establish a reasonable basis to deny an assignment of the option to purchase owned by [the Hulls], as husband and wife."

Point II is directed to the first two of the trial court's "independent reasons" for granting the motion for summary judgment. It asserts that if defendant's written consent to the assignment was required by the terms of the lease with option to purchase, whether defendant's refusal to grant consent was unreasonably withheld is a genuine issue as to a material fact that precluded the granting of summary judgment.

Rule 74.04(c)(6) provides, as applicable here:

> *Rulings on Motions for Summary Judgment.* After the response, reply and any sur-reply have been filed or the deadlines therefor have expired, the court shall decide the motion.

> *If the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact* and that the moving party is entitled to judgment *as a matter of law*, the court shall enter summary judgment forthwith. [Emphasis added.]

. . .

The Lease Agreement with Option to Purchase has one sentence that addresses a requirement for written consent by defendant. It states, "[The Hulls] shall not assign or sublet the Premises [2] without the written consent of [defendant], which consent shall not be unreasonably withheld." The sentence appears in a paragraph that further imposes requirements on defendant not to sell "the Premises" to anyone other than the Hulls during the term of the agreement, nor to subject it to excessive liens or encumbrances that would exceed the purchase price set by the terms of the option.

■ "The burden of establishing a right to judgment as a matter of law rests with the moving party and any evidence which demonstrates a genuine issue of material fact will defeat the moving party's prima facie showing." *Hanson v. Union Elec. Co.,* 963 S.W.2d 2, 4 (Mo.App.1998). Plaintiff argues that even if a written consent to the assignment of the option to purchase the real estate in question were required (although plaintiff contends none was) there was a genuine issue of material fact with respect to whether defendant unreasonably withheld its consent to the assignment of the option. Generally, a question of reasonableness is a question of fact, not a question of law. *Wunsch v. Sun Life Assur. Co. of Canada,* 92 S.W.3d 146, 153 (Mo.App.2002). Whether conduct is reasonable can be determined as a matter of law only if the determination is based on undisputed facts. *Id.*

The reason defendant gave for its unwillingness to provide a written consent to the assignment of the option to purchase the real estate was that it had received inquiries from the attorney general's office regarding the ownership of the property. Defendant asserted that it desired "to avoid collusion with a felon, or even the appearance of collusion with a felon." Plaintiff countered that it had provided defendant with information that personnel of the attorney general's office had given assurance that no claim would be made on

---

2. The agreement defines "Premises" as "real estate legally described as: All of Lot 23 in Spring Creek Phase VI, a subdivision in Springfield, Greene County, Missouri."

behalf of that office to the real estate in question and that there was no objection to the assignment of the option to purchase that the Hulls made to plaintiff; that plaintiff's attorney notified defendant accordingly.

Under these facts, whether refusal by defendant to convey the real estate to plaintiff on the basis that it had not consented to the assignment of the option to purchase by the Hulls to plaintiff is a question of fact subject to determination pursuant to evidence that would be adduced at trial. The facts asserted in support of defendant's motion for summary judgment did not include specifics with respect to whatever communications defendant had from others and on which defendant contends it relied in refusing to consent to the Hull's assignment of the option to purchase the real estate. Whether communications defendant had with others afforded a reasonable basis for defendant to withhold its consent to the assignment (if in fact defendant's consent were required) presents a genuine issue of a material fact. The trial court's assertion that the first two "conclusions of law" that it declared were sufficient to grant summary judgment was, therefore, erroneous. Point II is granted.

Point III is directed to the trial court's assessment that summary judgment for defendant should be granted because a limited liability company may not receive an interest in Missouri real estate until it is formed. Point III argues that the trial court erred in granting the motion for summary judgment because plaintiff was entitled to enforce its right to exercise the option to purchase the real estate in question in that plaintiff ratified and accepted the benefit of the assignment of the option to purchase.

By letter dated March 24, 2006, the Hulls' attorney, "on behalf of [the Hulls]," notified defendant that they were exercising their option to purchase the real estate. Defendant was advised that the Hulls had entered into a contract to sell the real estate to a third party and advised defendant of a tentative closing date and location. According to the affidavit of George W. Hull, the procedure the Hulls intended to follow was to exercise the option to purchase the property and that "the assignment of the option to purchase the subject real estate would be effective upon and following [the Hulls'] notice of exercise of the option to Defendant." The trial court had before it the affidavit of real estate agent Carron J. King that outlined a procedure consistent with that set forth in Mr. Hull's affidavit.

Ms. King's affidavit stated that she, in her capacity as a licensed real estate agent, represented plaintiff. Her affidavit includes the following.

Prior to the assignment of the option to purchase from [the Hulls], I spoke on the telephone with Ronald Stenger. I told Ronald Stenger of the Hulls' desire to market the real property located at 2250 East Briar Road in Springfield, Missouri. I specifically inquired of Ronald Stenger if the Hulls formed a limited liability company of which they were the sole members, whether the defendant would convey the real property to that limited liability company under the terms of the option to purchase in the Hull's [sic] lease agreement with the defendant. Ronald Stenger informed me that the defendant would transfer the real property to such a limited liability company.

Ms. King's affidavit states that she thereafter listed and actively marketed the real estate; that she obtained a contract for the sale of the property and, after the March 24, 2006, letter that notified defendant that the Hulls were exercising their option to

purchase the property, she "provided the Assignment of Rights to Great American Title in preparation for an April 14, 2006 closing."

Per Ms. King's affidavit, she, at defendant's request, later provided defendant with photocopies of plaintiff's organizational documents. Ms. King's affidavit further states that because of defendant's refusal to convey the real estate to plaintiff, no closing occurred notwithstanding that plaintiff was at all times financially able and prepared to complete the transaction.

■ Defendant relies on § 347.037.4[3] in claiming plaintiff was not entitled to have the real estate conveyed to it. The first sentence of that subparagraph is the part of the statute on which defendant relies for the proposition that plaintiff was not entitled to have the real estate conveyed to it. The sentence states, "A limited liability company may not transact business or incur indebtedness, *except that which is incidental to its organization* or to obtaining subscriptions for or payment of contributions, until the articles of organization have been filed with the secretary or until the formation date specified in the articles of organization." (Emphasis added.) The following language appears in § 347.037.4 immediately after the sentence on which defendant relies:

> Persons engaged in prefiling activities other than those described in the preceding sentence shall be jointly and severally liable except as provided in this section for any debts or liabilities incurred in the course of those activities. *This section shall not be interpreted to invalidate any* debts, *contracts*, or liabilities *of the limited liability company incurred solely on behalf of a limited liability company to be formed,* nor shall it be interpreted to impose person-

al liability on the persons incurring such debts, contracts or liabilities solely on behalf of the limited liability company to the extent so disclosed or to the extent such debts, contracts or liabilities provide otherwise. [Emphasis added.]

Plaintiff responds to defendant's claim by asserting that the Assignment of Rights was the product of a contract between the Hulls and a limited liability company to be formed; that defendant's claim that the transaction was prohibited by the first sentence of § 347.037.4 does not apply. Plaintiff argues that the language of the statute that prohibits invalidation of contracts incurred solely on behalf of a limited liability company to be formed defeats defendant's claim.

Documents that plaintiff provided the trial court in opposition to defendant's motion for summary judgment support the Hulls' claim that they intended to effectuate assignment of their right to acquire title to the real estate by exercising the option that was part of their Lease Agreement with Option to Purchase; that, thereafter, the plaintiff would be entitled to take title to the real estate in accordance with the terms of the Assignment of Rights. Arguably, under these circumstances the agreement that spawned the Assignment of Rights was incidental to the organization of Briar Road, L.L.C., the limited liability company being formed, and, therefore, not subject to the prohibition against transaction of business prior to filing articles of organization. Regardless, the material presented by plaintiff in its response to defendant's motion for summary judgment supports the assertion that no request was made to defendant for the real estate in question to be conveyed to a limited liability company until after plain-

---

**3.** References to statutes are to RSMo 2000.

tiff had been formed by filing its articles of organization.

 Further, with respect to the exercise of the option that was part of the Lease Agreement with Option to Purchase, there is authority for the proposition that when a tenant who possesses an option to purchase the leased real estate exercises that option, the landlord is bound to convey the real estate in compliance with the option agreement; that by exercising the option the tenant has a right to assign its rights pursuant to the terms of the option without the landlord's consent. *See Leegar Realty Corp. v. Electromatic Mfg. Corp.*, 272 A.D. 1069, 74 N.Y.S.2d 766 (1947). *See also 3 Thompson on Real Property*, § 1156, pg. 573 (1980); 52 C.J.S. *Landlord and Tenant* § 119 pg. 186 and § 128 pg. 198 (2003). Once a lessee exercises an option to purchase leased real estate, the lessee is in possession of that property pursuant to a contract to purchase. *Bullock v. Cutting*, 155 A.D. 825, 140 N.Y.S. 686, 688 (1913). The contract to purchase that is created upon the exercise of the option is separate and apart from the lease agreement. *Id.*, 140 N.Y.S. at 688. A requirement in the lease agreement that the lessor consent to the assignment of the lease is not necessarily applicable to the contract to purchase the real estate that results from the exercise of the option. *Id.* Whether there is a basis for requiring consent to the assignment of the contract to purchase the real estate to defendant separate from the requirement for consent to be given to the assignment of the lease may be addressed at trial. Point III is granted. The judgment is reversed and the case remanded for further proceedings.

BATES and SCOTT, JJ., concur.