**BRIAR ROAD, L.L.C., Plaintiff–Respondent,**

v.

**LEZAH STENGER HOMES, INC., Defendant–Appellant.**

**No. SD 29930.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 16, 2010.

Craig F. Lowther, Lowther Johnson, Attorneys at Law, L.L.C., Springfield, MO, for Appellant.

Stuart H. King, Hosmer King & Royce, L.L.C., Springfield, MO, for Respondent.

GARY W. LYNCH, Presiding Judge.

Lezah Stenger Homes, Inc. ("Stenger Homes") appeals the judgment of the trial court ordering it to convey Lot 23, Spring Creek Phase VI ("the property"), to Briar Road, L.L.C. ("Briar Road"). Finding no merit in any of Stenger Home's five points on appeal, we affirm the judgment.

### Factual and Procedural Background[1]

Stenger Homes and George W. Hull and Minnie J. Hull entered into a written Lease Agreement with Option to Purchase ("Lease") of the property on October 31, 2001. Paragraph fifteen of the Lease set forth an option to purchase in favor of the Hulls that specified a sale price of $198,500.00, if exercised, with the Hulls receiving full credit for a $56,000.00 non-refundable option payment, leaving a balance of $142,500.00 due to Stenger Homes at closing. Paragraph five of the Lease provided that the Hulls would not "assign or sublet the [property] without the written consent of [Stenger Homes], which consent shall not be unreasonably withheld." By its terms, the Lease was to terminate on October 31, 2003, but the parties agreed to extend all its terms and conditions, including the option to purchase, on a month by month basis. Sten-

---

1. Briar Road's motion for leave to file a supplemental legal file, taken with the case, is sustained, and the supplemental legal file is deemed filed.

ger Homes advised the Hulls by letter dated January 31, 2006, that the Hulls had until April 1, 2006, to exercise the option to purchase the property and until June 1, 2006, to close.

In November 2005, the Hulls assigned their option to purchase the property to Briar Road, which is a limited liability company. The Hulls were its original members. On March 24, 2006, the Hulls' attorney notified Stenger Homes in writing of their intent to exercise the option to purchase the property in accordance with the terms of the Lease as extended. The same letter informed Stenger Homes that the property was under contract for sale to a third party, with a tentative closing set for April 14, 2006.[2] The closing did not occur because on April 6, 2006, Stenger Homes sent a letter to the Hulls' attorney, who also represented Briar Road, stating that

> [Stenger Homes] has received correspondence from Great American Title that [the Hulls] have assigned their interest in the Lease Agreement with Option to Purchase to [Briar Road]. I then spoke with C.J. King, who sent copies of the Articles of Incorporation and Operating Agreement to me. This Lease Agreement is not assignable without the written consent of [Stenger Homes]. [Stenger Homes] does not consent to the

assignment and will not, under any circumstances deed the property to anyone other than [the Hulls].

Briar Road filed its initial petition in the Circuit Court of Greene County on April 19, 2006, five days after the closing on the property failed to occur. In an earlier appeal, this Court reversed the trial court's grant of summary judgment in favor of Stenger Homes and remanded the case to the trial court for further proceedings. *Briar Road, L.L.C. v. Lezah Stenger Homes, Inc.,* 256 S.W.3d 131 (Mo.App. 2008) (*"Briar Road I "*).

At the trial following remand, the Hulls' real estate agent, C.J. King, testified that before November 4, 2005, and before listing the property for sale, she inquired of Ron Stenger—acting on behalf of Stenger Homes—as to whether Stenger Homes would transfer the property to a limited liability company formed by the Hulls. King testified that Stenger answered affirmatively. King further testified that she had many conversations with representatives of Stenger Homes between the March 24, 2006, notice of the Hulls' exercise of the option and the scheduled closing on April 14, 2006, and afterward, all in an attempt to figure out a plan to close on the property.[3]

The trial court entered its judgment expressly finding, *inter alia,* that "[o]n No-

---

2. In its brief, Briar Road objects to Stenger Homes' inclusion of a line in their Statement of Facts which reads, "Additionally, [Stenger Homes] had no information that either the Hulls or [Briar Road] had the money to close or the ability to perform under the option to purchase." Briar Road asserts that Stenger Homes knew that Briar Road's contract price with the third party was higher than the purchase price under the option to purchase. We agree that the record supports that Stenger Homes had knowledge of the terms of the proposed closing to the third party on April 14, 2006, sufficient to allay fears of inability to close, and we sustain the objection and order the line stricken accordingly.

3. Briar Road objects to statements in Stenger Homes' statement of facts in its brief regarding Stenger Homes' lack of prior knowledge of and consent to the assignment from the Hulls to Briar Road. While it is unclear from the record whether Stenger Homes consented to the specific assignment to Briar Road, through King's testimony it is evident that Stenger Homes had knowledge of the Hulls' desire to assign their option to purchase to an unidentified limited liability company and that it acquiesced to such an assignment. Therefore, we sustain Briar Road's objection and order those statements stricken.

vember 4, 2005, the Hulls executed their "Assignment of Rights in favor of Briar Road" and that "[t]he Hulls and Briar Road intended and agreed that the assignment of the option to purchase the [property] would be effective upon and following the Hulls' notice of exercise of their option to [Stenger Homes]." In addition, the trial court found "no basis for requiring consent to the assignment of the contract to purchase the real estate [.]" The judgment ordered Stenger Homes to convey the property to Briar Road by warranty deed and to pay damages for breach of contract, damages for diminution in value of the property, and interest. Stenger Homes timely appealed.

### Standard of Review

As this was a court-tried case, we review pursuant to the well-known principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "[W]e accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence." *Deck v. Deck*, 64 S.W.3d 870, 873 (Mo.App. 2002). We recognize the superior position of the trial court in assessing factors such as credibility, sincerity, and character of the witnesses. *Id.*

### Discussion

#### *The trial court's finding of the existence of an assignment is supported by substantial evidence and is not against the weight of the evidence*

Stenger Homes' first point challenges the trial court's factual finding that

Briar Road was assigned the rights to the option to purchase the property pursuant to an assignment of rights agreement executed by the Hulls. Stenger Homes claims that there was no substantial evidence to support the trial court's conclusion and it was against the weight of the evidence because the purported assignment of rights document, Plaintiff's Exhibit 7, was never admitted into evidence. Specifically, Stenger Homes asserts that there was no substantial evidence supporting the trial court's finding that Briar Road was a proper assignee of the option to purchase without the admittance of that document into evidence. Before discussing this point, however, we must address a preliminary matter—what is Plaintiff's Exhibit 7?

Unfortunately, Stenger Homes chose not to deposit Plaintiff's Exhibit 7 with this Court. *See* Rule 81.16(a); Southern District Special Rule 4. While Stenger Homes in its brief refers to Plaintiff's Exhibit 7 as the "purported Assignment of Rights," in the absence of this exhibit, we are unable to confirm from the record before us that this exhibit is the original assignment of rights document relied upon by Briar Road. Likewise, in its absence, we cannot definitively determine whether Plaintiff's Exhibit 7 is one and the same document referred to as the "Assignment of Rights" dated November 4, 2005, in our opinion in *Briar Road I*, 256 S.W.3d at 133.[4]

As the appellant here, Stenger Homes had the obligation and duty to provide a full and complete record on appeal. Rule 81.12(c) and (e); *Smith v. Associated Natural Gas Co.*, 7 S.W.3d 530, 535 (Mo.App.1999). When an exhibit is not deposited with this Court, "the intendment and content of the exhibit [will be]

---

4. In its brief filed with this Court in *Briar Road I*, Stenger Homes represented to this Court that "[t]here is no dispute that the purported assignment of rights was made upon [sic] November 4, 2005."

taken as favorable to the trial court's ruling and as unfavorable to the appellant." *Brown v. Brown*, 14 S.W.3d 704, 708 n. 5 (Mo.App.2000).

The record reflects that before Briar Road initially offered Plaintiff's Exhibit 7 into evidence, Plaintiff's Exhibit 33 had been admitted into evidence without objection. Plaintiff's Exhibit 33 is Stenger Homes' amended responses to Briar Road's request for admissions of facts and genuineness of documents. Therein, Stenger Homes admitted, among other matters, that "on November 4, 2005, the Hulls assigned their option to purchase the subject real property to Briar Road, LLC"; that Exhibit C to the petition was "a true and accurate photocopy of an Assignment of Rights executed by George W. Hull and Minnie J. Hull on November 4, 2005"; and that Stenger Homes was aware of "no basis in law or in fact to dispute that Exhibit C to the Petition filed herein is a true and accurate photocopy of an Assignment of Rights executed by George W. and Minnie J. Hull on November 4, 2005." Exhibit C is a copy of a document entitled "Assignment of Rights," dated November 4, 2005. An identical copy of this document is attached as Exhibit C to Briar Road's first amended petition. Additionally, the wording of the document attached as Exhibit C to both petitions is identical to the wording of the "Assignment of Rights" dated November 4, 2005, set forth verbatim in *Briar Road I*, 256 S.W.3d at 133.

In light of Plaintiff's Exhibit 33, as well as both parties' apparent concessions that Plaintiff's Exhibit 7 is the original assignment of rights document, this opinion will presume that an examination of Plaintiff's Exhibit 7 would support that it is the original "Assignment of Rights" document dated November 4, 2005, a copy of which was attached as Exhibit C to Briar Road's initial and first amended petitions and thereafter referenced in Briar Road's requests for admissions of facts and genuineness of documents and Stenger Homes' responses to such requests, and the document set forth verbatim and referred to as "Assignment of Rights" dated November 4, 2005, in *Briar Road I*. With this preliminary matter resolved, we now turn to our discussion of Stenger Homes' point.

The premise of Stenger Homes' point—the assignment document was not admitted into evidence—is incorrect. When Plaintiff's Exhibit 7 was first offered into evidence by Briar Road, the trial court sustained Stenger Homes' lack-of-foundation objection and declined to admit the document.[5] When Briar Road next attempted to admit Plaintiff's Exhibit 7, Stenger Homes objected on the basis of lack of foundation and hearsay. The trial

---

**5.** Stenger Homes' trial counsel premised this objection on the fact that "there's been . . . no discussion of it whatsoever." Apparently, trial counsel's objection was based on his belief that the exhibit had not been properly authenticated. *See Partney v. Reed*, 889 S.W.2d 896, 901 (Mo.App.1994) ("Before a writing can be admitted into evidence its proponent must show that it is, in fact, what it is claimed to be."). Stenger Homes' trial counsel later supported this objection by further arguing to the trial court that "no witness has testified about Plaintiff's Exhibit 7" and "I'm entitled to cross-examine somebody regarding the assignment of rights, which is at the-at the heart of this case." While the most common method of authentication may be through the testimony of a witness, authentication can be proved by other methods as well. *See* WILLIAM A. SCHROEDER, 23 MISSOURI PRACTICE, MISSOURI EVIDENCE § 900.1 (3d ed.2008). One of these alternative methods of authentication is through the use of requests for admissions and responses thereto, as authorized by Rule 59.01. *Id.*

Stenger Homes' appellate counsel in this appeal was not its trial counsel.
All rule references in this opinion are to Missouri Court Rules (2010).

court responded, "Well I'm going to—I'm going to stick with my [sic] objection until I get a chance to reread this. I've read it a hundred times, but I can't—I sleep, and then some of it goes away."[6] On the third and final attempt at admission, the trial court stated that it would "stay with [its] ruling on it, but ... place it in here to supplement the record [.]" The final remark made by the trial court about Plaintiff's Exhibit 7, however, was, "I'm going to read your cases before I make a final decision. At this point I'm going to stay with my guns on the objection." The trial court's last statement and its statement after the second offer indicate that the trial court considered its rulings up to that point to be interlocutory and that the exhibit's admission into evidence was subject to a final decision by the trial court before entering its judgment but after rereading a document or documents and reading some proffered cases.

In its judgment, the trial court expressly found that "[o]n November 4, 2005, the Hulls executed their Assignment of Rights in favor of [Briar Road]." Because the trial court in its judgment relied on facts supported only by Plaintiff's Exhibit 7 and specifically referenced the document marked as Plaintiff's Exhibit 7 by its title, "Assignment of Rights," the only logical conclusion is that the trial court reconsidered its previous interlocutory rulings and finally admitted Plaintiff's Exhibit 7 into evidence. Cf. In re Estate of Graham, 59 S.W.3d 15, 21 (Mo.App.2001) ("to hold now that the documents were not in evidence would be contrary to the actions of the court"). Stenger Homes' contrary premise is nothing more than an illogical attempt to pull up its point by its own bootstraps.

Stenger Homes' point relied on does not address or challenge in any manner the admissibility of Plaintiff's Exhibit 7 on appeal. That exhibit supports the trial court's finding that "[o]n November 4, 2005, the Hulls executed their Assignment of Rights in favor of [Briar Road][,]" such that this finding is supported by substantial evidence and is not against the weight of the evidence. Stenger Homes' first point is denied.

### The trial court's finding that the Hulls and Briar Road intended and agreed that the assignment was to become effective at a later date is supported by substantial evidence and is not against the weight of the evidence

Stenger Homes' second point asserts that there was "no evidence that the parties to the assignment had any intent or agreement that the assignment of the option to purchase would not be effective until the Hulls provided notice of the exercising of their option." Thus, Stenger Homes argues that the trial court's finding that "[t]he Hulls and Briar Road intended and agreed that the assignment of the option to purchase the [property] would be effective upon and following the Hulls' notice of exercise of their option to [Stenger Homes]" is not supported by substantial evidence and is against the weight of the evidence. Because we find that the trial court's finding is a reasonable inference drawn from the circumstantial evidence before it, we disagree.[7]

---

6. Nothing in the record identifies the document or documents the trial court was going to reread.

7. Briar Road correctly points out that Stenger Homes' point contains no list of legal authority immediately following it as required by Missouri Court Rule 84.04(d)(5). We prefer to decide a point on its merits rather than dismiss it for briefing deficiencies, but we will generally only do so where the argument and point relied on together are sufficient to ascertain the issues being raised. *Stangeland v. Stangeland*, 33 S.W.3d 696, 703 (Mo.App. 2000). "Although deficient points preserve nothing for appellate review, we may choose to review them if the deficiency does not impede a disposition on the merits." *DeLong*

■ "This court does not determine what the trial court could have found; instead, it determines whether the trial court's actual finding is unsupported by substantial evidence or against the weight of the evidence." *McCoy v. Scavuzzo,* 250 S.W.3d 1, 9 (Mo.App.2008). For both challenges, we assess the evidence that supports the trial court's finding, and for against-the-weight-of-the-evidence challenges, we evaluate the remaining portions of the record on appeal as well. *See Houston v. Crider,* 317 S.W.3d 178, 186–88 (Mo. App. S.D.2010).

The "Assignment of Rights" dated November 4, 2005, does not specify when or under what conditions it was to become effective. The Hulls, not Briar Road, gave notice of their intent to exercise the option, more than four months following their execution of the assignment of rights document. King, the Hulls' real estate agent, testified that after the Hulls exercised their option to purchase, she provided a copy of the assignment of rights document to the closing company. King testified that Briar Road never asserted any rights as a tenant and did not want to be a tenant of the property. Likewise, Ron Stenger acknowledged that Briar Road never attempted to act as a tenant of the property, never paid rent, and never notified Stenger Homes that it had any claim to be a tenant. In summary, Briar Road took no actions as a tenant in the four months between the assignment of rights document and the exercise of the option by the Hulls, the exercise of the option was done in the name of the Hulls and not Briar Road, and the assignment of rights document was presented only after the option was exercised. The record thus contains evidence from which the trial court could reasonably draw the inference that the parties intended and agreed for the assignment to be effective only after the Hulls exercised their option to purchase, and there is no contradictory testimony or evidence in the record.

Substantial evidence supports the trial court's finding that the parties to the assignment intended and agreed that the assignment was to become effective only upon notice of the Hulls' intent to exercise the option to purchase, and with no contrary evidence in the record, this finding is not against the weight of the evidence. Stenger Homes' second point is denied.

*The trial court's conclusion that Stenger Homes' consent was not required for a valid assignment of the option to purchase was not an erroneous declaration or application of the law*

■ In its third point, Stenger Homes contends that the trial court erroneously declared or applied the law when it held that the consent of Stenger Homes was not required for the assignment of rights from the Hulls to Briar Road. Stenger Homes asserts that "paragraph 5 of the Lease specifically provided that the Hulls shall not assign or sublet the Premises without the written consent of Stenger Homes and such requirement also applies to the assignment of the option of the right to purchase the [property]."

The first sentence of paragraph five of the Lease with Option to Purchase provides: "[The Hulls] shall not assign or sublet the Premises without the written consent of [Stenger Homes], which consent

*Plumbing Two, Inc. v. 3050 N. Kenwood LLC,* 304 S.W.3d 784, 788 (Mo.App.2010). Briar Road relies on *Eagle ex rel. Estate of Eagle v. Redmond,* 80 S.W.3d 920, 924 (Mo.App.2002), for the proposition that an appellate court cannot reach the merits of a claim of error where arguments about the claim are not developed. But here, that is not the case. We find that the point relied on and the associated arguments adequately delineate the issue being raised. *See Stangeland,* 33 S.W.3d at 703.

shall not be unreasonably withheld." "Premises" is defined in that agreement as "real estate legally described as: All of Lot 23 in Spring Creek Phase VI, a subdivision in Springfield, Greene County, Missouri."

The law on this issue was resolved in *Briar Road I*, wherein this Court stated that

> with respect to the exercise of the option that was part of the Lease Agreement with Option to Purchase, there is authority for the proposition that when a tenant who possesses an option to purchase the leased real estate exercises that option, the landlord is bound to convey the real estate in compliance with the option agreement; that by exercising the option the tenant has a right to assign its rights pursuant to the terms of the option without the landlord's consent. *See Leegar Realty Corp. v. Electromatic Mfg. Corp.*, 272 A.D. 1069, 74 N.Y.S.2d 766 (1947). *See also 3 Thompson on Real Property*, § 1156, pg. 573 (1980); 52 C.J.S. *Landlord and Tenant* § 119 pg. 186 and § 128 pg. 198 (2003). Once a lessee exercises an option to purchase leased real estate, the lessee is in possession of that property pursuant to a contract to purchase. *Bullock v. Cutting*, 155 A.D. 825, 140 N.Y.S. 686, 688 (1913). The contract to purchase that is created upon the exercise of the option is separate and apart from the lease agreement. *Id.*, 140 N.Y.S. at 688. A requirement in the lease agreement that the lessor consent to the assignment of the lease is not necessarily applicable to the contract to purchase the real estate that results from the exercise of the option. *Id.* Whether there is a basis for requiring consent to the assignment of the contract to purchase the real estate to defendant separate from the requirement for consent to be given to the assign-

ment of the lease may be addressed at trial.

256 S.W.3d at 139.

From the evidence adduced at trial, the trial court concluded that "upon the Hulls' exercise of the option to purchase on March 24, 2006, the lease agreement was terminated and the parties were left with a bilateral contract," and that there was no basis for requiring consent to the assignment of the purchase option separate from the consent to be given to the assignment of the lease.

■ An option vests the buyer with the power of acceptance, and once the buyer accepts the offer in the prescribed manner, the option is considered exercised so as to create a binding bilateral contract. *In re Estate of Schulze*, 105 S.W.3d 548, 550 (Mo.App.2003). Upon the exercise of the option by the Hulls on March 24, 2006, the lease agreement was terminated, and the parties were left with a bilateral real estate contract. *Id.* At that moment, the assignment from the Hulls to Briar Road became effective, unless the consent of Stenger Homes to such assignment was required by paragraph five of the Lease.

As observed in *Briar Road I* and quoted above, a provision in a lease requiring consent of the lessor to assign the premises is not necessarily applicable to a contract to purchase the premises created by the exercise of an option to purchase contained in that lease. *Briar Road I*, 256 S.W.3d at 139. The trial court received testimony on the purposes of the Lease's consent requirement and whether there was an independent basis for requiring consent to assign the real estate contract created by the exercise of the option to purchase contained in the Lease. That evidence consisted of the testimony of Stephanie Montgomery, an officer and director of Stenger Homes, and a judicial admission that Stenger Homes' trial coun-

sel made during the testimony of Ron Stenger.

During her testimony, Montgomery acknowledged that the Lease was a form document used by Stenger Homes and that the Hulls neither proposed additions nor changes to any of the language in the form. When asked about the purpose of the consent requirement in the Lease, Montgomery explained that it was put in the document so that Stenger Homes "would have control over who lived in the home that we owned." Montgomery proffered no basis or purpose for the application of the Lease's consent requirement to the assignment of the contract to purchase created by an exercise of the option to purchase.

Counsel for Briar Road sought to inquire of Ron Stenger during his testimony as to the existence of any other purposes for the consent requirement in the Lease when trial counsel for Stenger Homes interposed the following objection:

[COUNSEL]: Well, Your Honor, the lease itself contains the assignment provision. It's not in the option to purchase, and the option to purchase was not right [sic] whenever that was put in the lease. The purpose of the lease is exactly what [plaintiff's counsel] has just stated. The landlord wants to know who's there and whether or not they can pay.

So at the time he's asking about the purpose—and I'm going to object to him framing this as an option to purchase— why would you care as long as someone gets the money? He's getting the cart after the horse here because the critical time on why it was there is when it was a lease, not when it was an option to purchase.

A judicial admission can be made by a party or an attorney. *Francis v. Richardson*, 978 S.W.2d 70, 73 (Mo.App. 1998). It is "a more or less formal act done in the course of judicial proceedings which waives or dispenses with the production of evidence and concedes for the purpose of the litigation that a certain proposition is true." *Id.* (quoting *Hewitt v. Masters*, 406 S.W.2d 60, 64 (Mo.1966)). Its effect is to remove "the proposition in question from the field of disputed issues in the particular case wherein it is made." *Id.* (quoting *Mitchell Engineering Co. v. Summit Realty Co., Inc.*, 647 S.W.2d 130, 140 (Mo.App.1982)).

Stenger Homes' trial counsel attempted to limit the scope of Briar Road's inquiry of Ron Stenger as to the purpose of the consent requirement in the Lease by conceding that its purpose was only related to the landlord's desire "to know who's there and whether or not they can pay [,]" and had nothing to do with the option to purchase because "why would you care as long as someone gets the money?" Briar Road and the trial court had the right to rely upon these concessions and the consequent removal of this disputed issue from the case. *Id.*

The trial court concluded that the testimony did nothing to establish any independent underlying basis for a purchase-option consent requirement. Because this fact issue is a matter of witness credibility, we defer to the trial court's superior opportunity to assess credibility, sincerity, and character. *See Deck*, 64 S.W.3d at 873. Taking this view of the facts, as we must, and coupled with the judicial admission by Stenger Homes' trial counsel, we find no basis to conclude that the trial court either erroneously declared or applied the law. Stenger Homes' third point is denied.

### Stenger Homes' fourth and fifth points are moot

In its fourth point, Stenger Homes challenges the trial court's holding that Sten-

ger Homes did not have a reasonable basis on which to withhold consent to the assignment. This issue is moot pursuant to our finding that consent was not required in the first instance, as discussed above under Stenger Homes' third point.

In its fifth point, Stenger Homes claims that the trial court erroneously held that the Hulls had the right to exercise the option to purchase the property on March 24, 2006, because if the November 4, 2005, assignment was valid, as the trial court held, the Hulls were divested of their option on that date. Because the parties intended and agreed for the assignment to become effective upon the Hulls' notice of their intent to exercise the option, as we discussed under Stenger Homes' second point, this issue is also moot.

### Decision

The trial court's judgment is affirmed.

RAHMEYER, J., and FRANCIS, J., concur.