**Donald A. WITT, Respondent,**

v.

**Jo Ellen WITT, Appellant.**

**No. WD 51926.**

Missouri Court of Appeals,
Western District.

Oct. 8, 1996.

Thomas Hankins, Gladstone, for appellant.

Abe Shafer, IV, Weston, for respondent.

Before HANNA, P.J., SPINDEN and EDWIN H. SMITH, JJ.

PER CURIAM.

Donald and Jo Ellen Witt divorced on September 14, 1995, after 34 years of marriage. The circuit court divided the couple's property and denied Jo Ellen Witt's request for maintenance. On appeal, Jo Ellen Witt charges the circuit court with abusing its discretion in denying her request for maintenance and in its allocation of a contingent liability and certain marital property. We reverse in part and remand with instructions.

When the couple divorced, Don Witt was 58–years–old and practiced law in Platte City. Jo Ellen Witt was 56–years–old and pastored a small church in Marysville, Kansas. The couple married after Don Witt's first semester of law school. During law school, Don Witt worked as an insurance claims adjuster, and Jo Ellen Witt was a school teacher. She quit teaching in 1962 after becoming pregnant with the couple's first child. Aside from doing some seasonal work preparing income taxes at her husband's office from 1965 to 1988, she did not resume formal employment until 1992 when she began serving on the pastoral staff of a Kansas City church. She had enrolled in seminary in 1988 and had earned a master of divinity degree. She served on the pastoral staff for more than a year and taught briefly as an adjunct professor at William Jewell College.

In July 1994, Don Witt filed for divorce. Jo Ellen Witt filed a counter-petition requesting maintenance and attorney fees. The circuit court dissolved the marriage, divided the marital property, ordered Don Witt to pay Jo Ellen Witt's attorney fees and denied her request for maintenance.

### Maintenance

On appeal, Jo Ellen Witt contends that the circuit court abused its discretion in denying her request for maintenance. She claims that she is entitled to maintenance because she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. She asserts that the couple enjoyed a comfortable lifestyle during the marriage and that her former husband is financially able. She argues that she sacrificed her own career opportunities to raise their children and was dependent on her husband financially during the marriage. She contributed to the financing of Don Witt's law training. She complains that although she supported her husband's legal education and career, he did not support her "calling" to the ministry, and that the disparity in their earning capacities is gross.

Section 452.335, RSMo 1994, permits the circuit court to award maintenance if it finds that the spouse seeking it lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment. If the spouse requesting maintenance has insufficient property to meet his or her needs, the court must determine whether his or her reasonable needs can be met through appropriate employment. *Wallace v. Wallace,* 839 S.W.2d 354, 356 (Mo. App.1992). Although a spouse's "reasonable needs" does not necessarily equal the couple's standard of living established during the marriage, in a marriage of lengthy duration, where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs. *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 857 (Mo.App. 1977).

The circuit court found that the total value of the couple's marital property (less debts) was $880,305.38, and that an equal division of the marital estate would be $440,152.69. The court awarded $721,525.06 of the marital assets to Don Witt, which included the marital home valued at $330,000, a lake house valued at $83,500, other realty, stock valued at $185,000, $1000 in traveler's checks, a boat, a car, and miscellaneous items of furniture and household goods. To equalize the property division, the court ordered Don Witt to pay Jo Ellen Witt $281,372.37 cash within 30 days. It awarded Jo Ellen Witt $123,259.70 in individual retirement accounts (IRAs), a car, $900 in traveler's checks, a computer, books, clothing, and miscellaneous items of furniture and household goods. The court also set aside items of non-marital property to each of the parties.

The circuit court found that neither party was guilty of marital misconduct and that both were in good health and able to work. In determining that Jo Ellen Witt had sufficient property to provide for her needs and that she was able to support herself, the circuit court found that she could earn approximately $30,000 per year by investing $370,000 or $389,319 of the cash and IRAs awarded to her. The court also considered that she was earning $700 a month from her employment as a minister and that the church provided her with a house, utilities and a mileage allowance.

Contrary to the circuit court's assumption that Jo Ellen Witt could obtain income from the IRAs, Don Witt's expert testified that because she was only 56, she would not be able to obtain income from the IRAs before age 59 1/2 years without being penalized and taxed on the income. The expert recommended that the IRAs be left in a rollover account and not be used for everyday living expenses. It is well-settled that a spouse is not required to deplete his or her portion of martial assets for living expenses before being entitled to maintenance. *Jones v. Jones,* 866 S.W.2d 507, 509 (Mo.App.1993); *Wallace v. Wallace,* 839 S.W.2d 354, 357 (Mo. App.1992); *Cross v. Cross,* 790 S.W.2d 928, 930 (Mo.App.1990). Jo Ellen Witt should not be required to use her retirement funds for everyday living expenses before reaching the age of 59 1/2 years. Retirement accounts that are not readily available to a party should not be considered as "income-producing property" for purposes of determining whether a spouse is entitled to maintenance. *See Baker v. Baker,* 815 S.W.2d 493, 494 (Mo.App.1991). Since the IRAs were not readily available to Jo Ellen Witt without penalty and taxes, the court should not have relied on calculations which included those funds in estimating her potential monthly and annual investment income. She submitted an income and expense statement indicating that her monthly expenses were $3858. The trial court made no finding that these expenses were unreasonable, nor did it specify what it believed to be the amount of Jo Ellen Witt's "reasonable needs." Don Witt, however, challenged the monthly expense statement. He noted that in her interrogatory answers, she stated that her monthly expenses were $3087, not $3858.

The record indicates that if Jo Ellen Witt invested the $281,372 cash award, her projected monthly investment income could range from $1523 to $1926, or an average of

$1673 per month.[1] This amount, combined with her net income of $502 from her employment as a minister, does not meet her monthly expenses. She should not be required to take prematurely from her retirement funds to meet her current day-to-day living expenses.

■ Don Witt argues that if Jo Ellen Witt's income was insufficient to meet her reasonable needs, it was because she voluntarily became under-employed by accepting a position as a minister which paid less than other jobs. Although the statute does not define "appropriate employment," it has been suggested that the employment should be "appropriate to [a person's] skills and interests." *Brueggemann,* 551 S.W.2d at 858 (citing comments to § 308 of the Uniform Marriage and Divorce Act).

Jo Ellen Witt was a homemaker and assumed responsibility for rearing the couple's three children. She was never self-supporting and always relied on her husband for financial support. She is skilled and interested in church ministry. Although she taught school briefly in the 1960s, her age and her absence from the workforce for nearly 30 years suggest that without acquiring new skills she would not be able to compete successfully in today's marketplace for a position, other than what she is doing, which would enable her to be self-supporting.

■ "The detrimental effect of the withdrawal of a spouse from the job market to assume the duties of a homemaker which cause the spouse to be unable to provide for his or her reasonable needs is also a sound basis for an award of maintenance." *Klein v. Klein,* 837 S.W.2d 567, 570 (Mo.App.1992). Maintenance may be awarded when one spouse was a homemaker during the marriage and relied on the other spouse for monetary support, staying out of the marketplace. *See Hart v. Hart,* 741 S.W.2d 105, 107 (Mo.App.1987). A gross and permanent disparity between the parties' ability to work and to earn a living is also a sound reason for a maintenance award. *Klein,* 837 S.W.2d at 570. In determining the amount of mainte-nance, the circuit court must balance the reasonable needs of the spouse seeking maintenance against the other spouse's ability to pay. *Sinclair v. Sinclair,* 837 S.W.2d 355, 360 (Mo.App.1992); *Giordano v. Giordano,* 772 S.W.2d 407, 408 (Mo.App.1989).

The disparity between the parties' earning capacities is gross. Jo Ellen Witt's net monthly income from her pastorate is $502. Don Witt's average annual income over the past five years was more than $100,000.

We conclude that Jo Ellen Witt is not able to meet her reasonable needs and that the circuit court erred in determining otherwise. She is entitled to maintenance for a limited duration, not to terminate before she reaches age 59 1/2 years. We, therefore, reverse the portion of the circuit court's judgment denying maintenance and remand the cause for the circuit court's redetermination of what amount to award for maintenance.

### Contingent Lawsuit Liability

■ Jo Ellen Witt also contends that the circuit court abused its discretion in assigning a negative $20,000 value to a contingent lawsuit liability and in setting aside that liability to Don Witt. The contingent liability grew out of a lawsuit against Don Witt, the City of Riverside, and the members of the Board of Alderman.

The plaintiff, Fred Wilkins, accused Don Witt of engaging in a conspiracy to discharge him unlawfully as a city employee. The case was set for trial in federal court in October 1995, and an insurance company defended Witt. Before trial and before the circuit court entered its judgment in this case, the federal court dismissed Witt as a defendant, subject to Wilkins' appeal. The jury later returned a verdict for Wilkins.

Jo Ellen Witt argues that the circuit court should not have assigned the contingent lawsuit liability to Don Witt because he was dismissed from the lawsuit. She also claims that any evidence concerning the true value of any potential liability was too speculative and Don Witt presented no evidence that he would ever have to pay any damages. She

---

**1.** These figures, set out in Jo Ellen Witt's brief, are based on a percentage of the estimates sub-mitted by Don Witt's expert who proposed a principal investment of $370,000.

further asserts that he had insurance coverage and could reasonably expect Riverside to indemnify him.

■ A circuit court should not include in marital debts any liabilities which a party is not likely to have to pay. *See Bold v. Bold,* 912 S.W.2d 477, 486 (Mo. banc 1995). Don Witt acknowledged at oral argument that the case was never appealed. He also noted in his brief that Riverside's Board of Alderman approved a settlement of the case in February 1996. Although an appeal resulting in Witt's being put back in the case was possible, it was too speculative to have caused the circuit court to include the contingent liability as marital debt.

### Traveler's Checks

■ Jo Ellen Witt next contends that the circuit court abused its discretion in awarding her $900 in traveler's checks. She claims the court should have excluded the traveler's checks from the property division or determined that they had no value because the checks did not exist at the time of the dissolution hearing.

■ Generally, the circuit court uses the marital property's value on the date of trial. *In re Marriage of Gustin,* 861 S.W.2d 639, 643 (Mo.App.1993). When the court hears evidence that one spouse has secreted or squandered a marital asset in anticipation of divorce, it may hold that party liable for the squandered amount by awarding it to him. *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo.App.1992); *S.L.J v. R.J.,* 778 S.W.2d 239, 244 (Mo.App.1989).

The circuit court did not explain the basis for including the traveler's checks in the property division. It had no evidence establishing that Jo Ellen Witt secreted or squandered any marital funds in anticipation of the divorce. At the dissolution hearing, she explained how she had spent the traveler's checks:

> After Don said he wanted a divorce and there was this time when he was fluctuating back and forth and I said I needed to get away and have some time to think and I took the money and went to a retreat center in Boston and spent approximately two weeks in Boston and I spent the $900 in traveler's checks at that time and he knew I spent it. I told him I did.

Don Witt does not contend that his wife squandered or misused the traveler's checks in anticipation of divorce. Nor does he dispute that he knew his wife used the traveler's checks in the manner she asserted. The court made no finding that she squandered or misused the funds or that it did not believe her explanation. In the absence of evidence or a finding by the circuit court that Jo Ellen Witt secreted or squandered the traveler's checks in anticipation of divorce, we conclude that the circuit court improperly awarded that property to her. *See, e.g., Wilson v. Wilson,* 822 S.W.2d 917, 923 (Mo.App. 1991).

On remand, the circuit court shall alter its judgment by awarding Jo Ellen Witt a reasonable amount of maintenance in conformity to § 452.335. It shall further exclude Don Witt's contingent liability from its determination of marital debt, and delete the value of the travelers checks from the property division. The circuit court shall also consider the impact of removing the contingent liability from marital debt and the redistribution of the traveler's checks in making its award of maintenance.

All concur.