In re the Marriage of Clifford E.
DECK, Petitioner/Appellant,

v.

Helen Joyce DECK,
Respondent/Respondent.

No. ED 78961.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 15, 2002.

Donald Rhodes, Bloomfield, MO, for appellant.

Daniel Leslie, Union, MO, for respondent.

WILLIAM H. CRANDALL, JR.,
Presiding Judge.

Husband, Clifford E. Deck, appeals from the judgment of legal separation from wife, Helen Joyce Deck. We affirm in part, we affirm in part as modified, and reverse in part.

The parties were married in 1960 and separated in 1994. Four children were born of the marriage. The oldest was deceased and the remaining three were emancipated, all having graduated from college.

In 1975, the parties purchased a farm of approximately 365 acres in Osage County for $95,000.00, financing $75,000.00 of the purchase price. The farmhouse contained no indoor plumbing and only three electric outlets. The only source of heat in the farmhouse was a woodburning stove in the living room. Wife and children did the majority of the work on the farm; husband helped only on the weekends until his retirement. Husband did not permit wife or the children to have visitors to the farm. Wife was the exclusive caregiver to the children; and husband did not participate in their schooling or in their extracurricular activities.

Husband drove about 100 miles each way to work in St. Louis, Missouri, at the General Motors plant. In 1987, the plant closed; and in 1988, he began to draw his retirement. Although he was only 49 years of age at the time he retired, he did not seek other employment. At the time of trial, he was 60 years of age and testified that he was unable to work because of physical ailments. When husband retired, wife took a job outside of the home. At the time of trial, she was 58 years of age and was still employed. Husband received about $1,700.00 a month in retirement benefits. Wife earned about $325.00 per week. Throughout the marriage, husband spent marital assets on numerous vehicles for his personal use, on unnecessary farm equipment, and on credit card debt.

In 1993, wife informed husband she was leaving and taking the youngest child with her. At that point, husband and wife entered into an agreement whereby she and the youngest child were able to move out

of the farmhouse. Husband agreed to set off 40 acres of the farm to wife by survey, to co-sign for a loan for her to purchase a double-wide modular home to be placed on the 40 acres, and to give her one-half of his pension. In return, wife agreed to continue to help him with the farm work and to perform personal services for him. In 1994, wife and the youngest child moved to a modular home on the 40 acres; husband did not reside with them.

In 1998, husband sold the remaining part of the farm, receiving over $228,600.00 for it. After paying the real estate commission, he purchased an automobile for wife; paid off the loans on a truck, a tractor, and the modular home; paid off credit card debts; and paid federal income taxes. Wife took one-half of the remaining proceeds for her own use and opened two accounts in her own name. She placed the other half in a joint account with husband. Because husband contended that he only agreed to pay wife one-half of his pension until the youngest child graduated from college, he ceased giving her one-half of his pension. Wife then withdrew sums from the joint bank account to cover those payments. In addition, she paid off a credit card debt incurred by husband on daughter's credit card. As a result of these withdrawals, husband contended that he never received any of the funds from the sale of the farm for his own use.

Husband brought an action for legal separation and wife filed a cross-petition for the same. The trial court entered a judgment of legal separation. It divided the marital assets, giving wife one-half of husband's pension in accordance with their prior agreement; it set aside separate property to each party, ordering husband to execute a quitclaim deed to the 40 acres; it ordered husband to pay wife maintenance of $200.00 per month; and it award-

ed wife $2,000.00 for her attorney's fees. Husband appeals from that judgment.

 Our review of this case is guided by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence. *Schwartzkopf v. Schwartzkopf*, 9 S.W.3d 17, 20 (Mo.App. E.D.1999). We recognize the superior position of the court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in the transcript. *Id.* The party challenging the dissolution decree has the burden of demonstrating error. *Taylor v. Taylor*, 12 S.W.3d 340, 344 (Mo.App. W.D. 2000).

In his first point, husband contends the trial court erred in setting aside to wife the modular home and 40 acres as her separate property. Husband argues that the home and property were acquired with marital funds and that he never executed any documents to convey title to wife.

 The Dissolution of Marriage Act provides guidance in determining the classification of property as marital or separate in a proceeding for dissolution of marriage or legal separation. Section 452.330.1, RSMo 2000 states that "the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property in such proportions as the court deems just." Marital property is defined as "all property acquired by either spouse subsequent to the marriage." Section 452.330.2, RSMo 2000. Exceptions to this definition of marital property include property acquired by gift, bequest, devise or descent, or property acquired in exchange thereto. Sections 452.330.2(1) and (2), RSMo 2000. There is a presumption that all property acquired

subsequent to the marriage, regardless of whether title is held individually or jointly, is· marital property. Section 452.330.3, RSMo 2000. This presumption may be overcome by showing that the property in question falls into one of the statutory exceptions listed in section 452.330.3. The burden is on the party attacking the statutory presumption to show that it is no longer marital property. *Moseley v. Moseley*, 795 S.W.2d 464, 467 (Mo.App. 1990). There must be clear and convincing evidence showing that both parties intended that the property be excluded from their marital property. *Id.*

▬ Further, the trial court possesses broad discretion in identifying marital property. *Absher v. Absher*, 841 S.W.2d 293, 294 (Mo.App. E.D.1992). When characterizations of property as marital or separate rest on an assessment of witness credibility, this court defers to the trial court's determination of that credibility. *Feinstein v. Feinstein*, 778 S.W.2d 253, 261 (Mo.App.1989); *True v. True*, 762 S.W.2d 489, 492 (Mo.App.1988).

Here, the trial court found that in 1993, the parties entered into an agreement in which they agreed that wife would live nearby and continue to help with the farm work; and in return, husband would have 40 acres of the farm surveyed off to become hers alone. The court stated that it believed wife's testimony in that regard. The court noted that wife's testimony was corroborated not only by the testimony of the youngest child, but also by the writing on the back of the survey, signed by both wife and husband, to the effect that the purpose of the survey was to transfer sole ownership of the 40 acres to wife. Further, in its judgment of separation, the court ordered husband to execute a quitclaim deed conveying the 40 acres to wife.

▬ Whether a valid inter vivos gift was made is a question of fact. *Moseley,*

795 S.W.2d at 467. The essential elements of an inter vivos gift are: (1) a present intention to make a gift on the part of the donor; (2) a delivery of the property by donor to donee; and (3) an acceptance by donee whose ownership take effects immediately and absolutely. *Id.* In the instant action, wife and the youngest child testified that husband expressed his intention to give wife the 40 acres and the modular home. Husband had the 40 acres surveyed and separated from the rest of the farm and had the modular home erected on the property. Wife and the youngest child moved into the modular home on the 40 acres in 1994 and husband never resided there. The trial court was free to believe the testimony that husband intended to give the 40 acres and the modular home to wife as a gift.

▬ It is clear, however, that husband did not take all the steps necessary to effectuate a legal transfer of the property to wife in that he did not execute any documents to convey the property to wife. In the absence of a legal conveyance, husband's express intent to give the property to wife was not sufficient to render it her separate property. The trial court erred in designating the 40 acres and the modular home thereon as nonmarital property, rather than as marital property.

▬ The trial court's intent, however, was to award wife the 40 acres and the modular home. Despite the court's mischaracterization of the property as nonmarital, the error is not prejudicial. *See Stephens v. Stephens*, 842 S.W.2d 909, 915 (Mo.App. S.D.1992). The mere erroneous designation of property as nonmarital, where the division is nonetheless fair, does not require reversal. We, therefore, give effect to the court's intended distribution. Even if the property was marital, the court had the authority to award the property to

wife as part of the division of the marital assets. The court did not err in awarding wife the 40 acres and the modular home when it divided the marital property. Husband's first point is denied.

In his second point, husband asserts that the trial court abused its discretion in dividing the marital assets, because it disproportionately awarded wife 84.59 percent of the parties' property.

Under section 452.330.1, in a proceeding for legal separation, the trial court is required to divide the marital property as the court deems just, after considering all the relevant factors. *Schwartzkopf*, 9 S.W.3d at 22. The trial court is not required to make an equal division, only an equitable one. *Id.* The court is vested with considerable discretion in dividing marital property, and the appellate court will interfere only if the division is so heavily in favor of one party that it amounts to an abuse of discretion. *Id.* We presume the division of property to be correct and the party challenging the division has the burden of overcoming that presumption. *Id.*

The factors listed in section 452.330.1 are nonexclusive factors to be considered in making a just division of marital property. One factor is the "contribution of each spouse to the acquisition of marital property." Section 452.330.1(2), RSMo 2000. In the case before us, wife was the primary, if not the sole, caregiver to the parties' four children. In addition, her contributions as a wife and homemaker consisted of being the primary caretaker for the entire family under unusually adverse conditions, which included the lack of plumbing, little or no heat throughout the house, and only two electric outlets for cooking. From the time they bought the farm in 1975, she worked on the farm with little help from husband until he retired in 1987. At that point in time, she took a job outside of the home to contribute to the financial support of the family, while husband did not seek outside employment, although he was only 49 years of age. The court found that wife had made a greater contribution to the marriage.

Another factor for the court to consider is the "conduct of the parties during the marriage." Section 452.330.1(4), RSMo 2000. Here, husband required the family to live under extremely adverse conditions in the farmhouse. He stated that he did not fix up or repair the farmhouse, because he eventually intended to build a new house. He did not allow wife or the children to have visitors. He was controlling and had a violent temper. He permitted wife to assume all responsibility for rearing the children, remaining totally uninvolved in their schooling or extracurricular activities. Husband wasted marital assets by buying new vehicles and unnecessary farm equipment, practically all of which was awarded to him in the property division. He also did not take another job upon his retirement, despite his relatively young age. The trial court characterized husband's behavior as "extreme marital misconduct."

In addition, the fact that an award by the trial court results in one spouse receiving a considerably larger percentage of the martial assets than the other spouse is not *per se* an abuse of discretion. *Buchheit v. Buchheit*, 768 S.W.2d 641, 642 (Mo.App.1989) (court awarded wife 75 percent of the marital property). A percentage is not controlling or meaningful, unless it is considered together with the nature and extent of the property divided. *See, e.g., Klenke v. Klenke*, 742 S.W.2d 621 (Mo.App.1987) (court awarded wife 70 percent of marital assets); *Cook v. Cook*, 706 S.W.2d 606 (Mo.App.1986) (court awarded wife 86 percent of marital proper-

ty). Given the circumstances of this case, we find no abuse of the trial court's discretion in its division of the marital assets. Husband's second point is denied.

In his third point, husband challenges the trial court's award of attorney's fees to wife. He argues that wife had the financial ability to pay for her own attorney's fees and that he did not.

Section 452.355.1, RSMo 2000 authorizes an award of attorney's fees in legal separation actions "after considering all relevant factors including the financial resources of both parties." To require one party to pay the attorney's fees of the other mandates a showing of unusual circumstances justifying deviation from the normal rule that each party should bear his or her own litigation costs in a dissolution action. *Schwartzkopf,* 9 S.W.3d at 24. The appellate court will overturn the trial court's order only upon a showing that the trial court abused its broad discretion in ordering, or refusing to order, one party to pay the attorney's fees of the other party. *Id.* To demonstrate an abuse of discretion by the trial court, the complaining party has the burden to show that the order for attorney's fees was clearly against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice and to indicate a lack of deliberation. *Id.* The financial state of the party seeking an award of attorney's fees is only one factor to consider. *Id.*

Here, husband voluntarily reduced his income by choosing to retire at 49 years of age and had not worked since 1987. He squandered marital assets by buying numerous vehicles and expensive farm equipment that was not essential to operating the farm. In addition, wife's earnings from her job were substantially less than husband's retirement benefits. The trial court did not err in ordering husband to pay a portion of wife's attorney's fees. Husband's third point is denied.

In his fourth point, husband asserts that the trial court erred in ordering him to pay wife $200.00 in maintenance. He argues that wife did not establish that she was unable to support herself through employment or that she lacked sufficient property to provide for her reasonable needs.

Wife counters that under *Witt v. Witt,* 930 S.W.2d 500, 503 (Mo.App. W.D.1996), she was not required to deplete her portion of the marital assets, including retirement accounts, before being entitled to maintenance. We disagree. In *Hill v. Hill,* 53 S.W.3d 114 (Mo. banc 2001), the Supreme Court of Missouri held that *Witt* and its progeny should not be interpreted to prohibit consideration of retirement accounts in calculating maintenance. In fact, *Hill* required that the trial court consider income from retirement accounts when calculating maintenance. *Id.* at 116.

We consider the court's award of maintenance to wife in light of the record before us and in light of the holdings so far on appeal. We conclude that wife had sufficient property, including the marital property apportioned to her, to provide for her reasonable needs. The trial court erred in awarding wife maintenance. Husband's fourth point is granted.

We acknowledge that when an appellate court changes one part of the decree, it is often necessary to reverse and remand for the trial court to reconsider other portions of the decree in light of that change. *See Lynch v. Lynch,* 665 S.W.2d 20, 24 (Mo.App.1983). In this case, however, a remand is unnecessary because the issue of maintenance is not interrelated with any other parts of the decree. Given that the property distribution heavily favored wife and that the court would be

unlikely to divest husband of the farm equipment and vehicles awarded to him in the property division, remand is unnecessary.

In accordance with Rule 84.14, we enter the judgment the trial court ought to have entered and modify the decree of dissolution as follows: the 40 acres and the modular home are classified as marital assets and husband is ordered to execute such documents as are necessary to convey title to both the 40 acres as well as the modular home to wife. That part of the judgment awarding wife maintenance of $200.00 per month is reversed. In all other respects, the judgment is affirmed.

PAUL J. SIMON, J., and ROBERT G. DOWD, JR., J., Concur.