Susan E. BOWMAN, Respondent,

v.

Gerard L. PRINSTER, Appellant.

No. ED 94509.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 23, 2012.

Rehearing Denied Nov. 29, 2012.

Benicia Ann Baker–Livorsi, St. Charles, MO, for appellant.

Tonya D. Page, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### *Introduction*

Gerard Prinster (Husband) appeals the judgment entered by the Circuit Court of St. Louis County dissolving his marriage to Susan Bowman (Wife). Husband claims the trial court erred in: (1) permitting his attorneys to withdraw and denying his motion for a continuance; (2) relying on incompetent testimony and stale appraisals in valuing the parties' real estate; (3) determining that the home the parties shared during the marriage was Wife's separate property; (4) determining that Husband's interests in a business and a retirement account were marital; and (5) awarding Wife temporary and future maintenance. We affirm.

### *Factual and Procedural Background*

In June 2007, Wife filed a petition to dissolve her marriage to Husband. Along with her petition, Wife filed a motion requesting relief pendente lite (the PDL Motion). In the PDL Motion, Wife requested temporary maintenance, asserting that Husband maintained complete control over a majority of marital funds.

Wife filed a motion for a temporary restraining order (the TRO) on February 9, 2009. Wife requested that the trial court prohibit Husband from disposing of proceeds from the imminent sale of a real estate parcel. The trial court entered a consent order granting Wife's request (the TRO Order).

On February 26, 2009, the trial court permitted Husband's first set of attorneys to withdraw. Husband's second set of attorneys entered their appearance in March 2009 and requested a continuance of the trial. The trial court granted the continuance and scheduled the trial to begin on July 6, 2009.

On June 16, 2009, Husband's second set of attorneys sent Husband, by mail and email, their motions to withdraw and shorten time for a hearing on the withdrawal motion. On June 18, 2009, eighteen days before trial, Husband's attorneys filed the motions and certificates of service showing they sent the motions to Husband. That day, the trial court conducted a hearing, which Husband attended. Husband's attorneys testified that they had joined a new law firm and that Husband had not signed an engagement letter with the new firm. Husband's attorneys also testified that they were "not able to assist [Husband] appropriately because of the restrictions that he has put on us," such as refusing to hire experts for the trial. Husband testified that he had not signed the engagement letter because the new firm had asked him to advance $25,000 for attorneys' fees and the costs of retaining an appraiser and a forensic accountant. Husband testified that he was unable to advance the money. Husband stated: "Trust me, I do not want this thing extended again. And I think it's unreasonable for them to withdraw at this point." The trial court advised Husband: "I am

not going to move the trial date. I know you don't want the trial date moved, you want to proceed." Husband responded, "that's correct." The trial court granted the motion to withdraw.

On July 2, 2009, Husband filed a motion to continue the trial date, and his new attorney filed a limited entry of appearance for the sole purpose of arguing the continuance motion. The trial court held a hearing on the motion on the morning of July 6, the first day of trial. The trial court found that a continuance would prejudice Wife for the following reasons:

> many of the assets are in the exclusive control of Husband; during these proceedings Husband has sold and further encumbered property without consulting Wife; Husband received all rental income; Wife ... incurred substantial attorney fees in preparation for this Trial date; Wife incurred fees in retaining a commercial appraiser and financial expert, both of which reports may have been stale if this Trial date were continued; and Wife's [sic] incurred substantial fees in subpoenaing current bank records.

The trial court denied Husband's motion.

The trial court conducted a trial at which Husband represented himself. Wife presented evidence regarding the value of real estate owned by the parties, their trusts, and various business entities in which Husband owned an interest. Wife testified as to the value of some of these real estate parcels, including parcels owned by Husband's trust and his entities. Wife called an appraiser to testify as to the value of certain parcels and offered written appraisals into evidence.

Wife presented testimony regarding SLGP, L.L.C. (the LLC), a limited liability company formed before the marriage. Wife offered into evidence the LLC's operating agreement, which provided that Husband owned a 52% interest and Husband's two children from a previous marriage each owned a 24% interest. Wife introduced the LLC's bank statements and testified that Husband deposited rents from property owned by his other business entities into the LLC's accounts and used the LLC's accounts to pay personal expenses. Wife called an accountant, Terry Richars, as a witness. Mr. Richars testified that he had reviewed the LLC's operating agreement, tax returns, and bank statements. Mr. Richars stated that Husband had paid personal expenses using LLC funds and that the LLC had not reported any distributions to Husband's children on its tax returns. Mr. Richars testified that the LLC had no formal bookkeeping and no internally prepared financial statements. Mr. Richars concluded that Husband controlled 100% of the LLC, based on "not following the operating agreement, the distributions were not pro rata, ... and the bank accounts were used to pay several or a significant amount of [Husband's] daily living expenses."

Wife testified that her trust owned the home the parties shared during their marriage (the Residence). Wife offered into evidence the following documents:

1. A 1996 general warranty deed in which certain parties transferred the Residence to Husband;

2. A 1996 quitclaim deed in which Husband transferred the Residence to the LLC;

3. An unrecorded 1999 quitclaim deed signed by Husband on behalf of the LLC, transferring the Residence to Husband and Wife as joint tenants with right of survivorship;

4. A 2004 quitclaim deed signed by Husband on behalf of the LLC, transferring the Residence to Wife;

5. A 2004 quitclaim deed in which Wife transferred the Residence to Wife's trust; and

6. A 2004 document entitled "Assent to Execution of Deeds and Waiver of Marital Rights," which Husband executed as grantor to Wife as grantee and recorded against the Residence (the Assent and Waiver).

In the Assent and Waiver, Husband stated:

I . . . hereby expressly assent to any conveyances of [the Residence] made by [Wife] at any time and acknowledge and state that any such conveyances are not to be deemed to be in fraud of my marital rights. I hereby waive any right to make any legal or equitable claim against [the Residence] now or at any future time, according to and as required by § 474.150. . . .

Wife testified that Husband executed the 1999 deed to Husband and Wife approximately fourteen days prior to the parties' marriage. Wife testified that Husband "was leaving to go out of town and was running out of time before our marriage. So he did this and he gave it to a friend to keep in case something happened to him." Wife testified that the deed was never recorded. Wife testified that in 2004, Husband executed the deed transferring the Residence from the LLC to Wife and the Assent and Waiver, both of which were recorded. On cross-examination, Husband asked Wife: "Was not the [2004 quitclaim] deed as well as the waiver of marital rights done so that we could get a loan that would pay off the commercial lien that I had on the [Residence]?" Wife answered: "We did obtain a new loan at that time or I obtained a new loan at that time."

Wife presented evidence that Husband owned a retirement account. Wife testified that she discovered this account when she reviewed Husband's bank statements and noticed a recurring debit to the account. Wife introduced account statements showing that Husband deposited funds into the retirement account monthly during the marriage.

The trial court entered findings of fact, conclusions of law, and a judgment and decree dissolving the marriage. The trial court found that "the matter was set for trial numerous times before it was finally heard" and that several of the continuances were at Husband's request or due to his failure to disclose assets or provide discovery. The trial court awarded the Residence to Wife, finding that it was a gift from Husband to Wife and was her separate property. The trial court awarded Husband his interest in the LLC and its assets and liabilities, finding that the LLC "is 100% Husband" and that Husband's interest in the LLC's assets was marital. The trial court found that Husband's retirement account was marital and awarded it to Wife. The trial court, which heard the PDL Motion with the trial "[d]ue to the complexity of the case," found that Wife had not received any rental income or sale proceeds from the parties' real estate during the litigation. Accordingly, the trial court ordered Husband to pay Wife temporary maintenance retroactive to the filing date of her PDL Motion. Addressing Wife's request for future maintenance, the trial court found that the property and cash payments awarded to Wife would be sufficient to meet her reasonable needs, but that Wife would not receive the property and payments immediately. The trial court ordered Husband to pay Wife monthly maintenance until Wife received all property and payments awarded to her. Husband appeals.

### Standard of Review

This court will affirm the judgment in a court-tried case unless there is

no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court views all of the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment and disregards all contrary evidence and inferences. *In re Marriage of Hillis*, 313 S.W.3d 643, 644 (Mo. banc 2010).

### Discussion

### A. Withdrawal of Attorneys and Denial of Continuance

■ In his first point on appeal, Husband argues the trial court erred in permitting his attorneys to withdraw and denying his motion for a continuance of trial. Specifically, Husband contends the trial court's actions prejudiced him because he had only eighteen days to secure replacement counsel for the trial. Wife counters that Husband refused to sign his attorneys' engagement letter and advance trial fees and costs and that Husband advised the trial court that he did not want a continuance.

■ "Whether to allow trial counsel to withdraw is within the sound discretion of the trial court," and we review the trial court's action for abuse of discretion. *Bledsoe v. Bledsoe*, 244 S.W.3d 204, 205 (Mo.App. E.D.2008) (quoting *Nance v. Nance*, 880 S.W.2d 341, 345 (Mo.App. E.D. 1994)). An attorney "may be warranted in withdrawing if the client deliberately disregards an obligation as to fees, in which event he must give his client due notice and allow him time within which to employ another lawyer." *Harms v. Simkin*, 322 S.W.2d 930, 933 (Mo.App.1959).

Husband admits that he refused to sign his attorneys' engagement letter and advance fees and costs for trial, but he argues that he did not have notice of his attorneys' withdrawal or time to employ other counsel. Husband relies on St. Louis County's Local Rule 21.4, which permits an attorney to withdraw "only by leave of Court, after filing a copy of the communication showing the client has notice of the withdrawal and of the date of trial setting if any." Twenty–First Judicial Circuit Rule 21.4. The record shows that Husband's attorneys complied with this rule by filing certificates of service showing they sent Husband their motion to withdraw two days before the hearing on the motion to withdraw. Moreover, Husband was present at the hearing and did not assert a lack of notice or request additional time to employ other counsel. To the contrary, when the trial court stated to Husband, "I know you don't want the trial date moved, you want to proceed," Husband responded, "that's correct." Husband has failed to establish that he did not have notice or time to employ other counsel. *See Harms*, 322 S.W.2d at 933 (holding no error in permitting withdrawal one week before trial where the record did not show that the client was not notified, that the client was unable to pay the fees, or that the client attempted to induce the lawyer to remain in the case).

Husband also cites *Bledsoe v. Bledsoe*, 244 S.W.3d 204 (Mo.App. E.D.2008), to support his argument that he did not have sufficient notice of his attorneys' withdrawal. *Bledsoe* is distinguishable. In that case, the husband's attorney demanded payment from the husband and threatened to withdraw on the Friday before the trial's Monday start date. *Id.* at 205. Additionally, the attorney participated in discussions on the husband's behalf in chambers on the morning of trial before requesting leave to withdraw, and the husband was not present when the trial court heard discussion on and granted the attorney's request in chambers. *Id.* On ap-

peal, the *Bledsoe* court held that under these circumstances, the attorney's notice of withdrawal was insufficient and the trial court had erred in allowing the attorney to withdraw. *Id.* at 205–06. Here, unlike in *Bledsoe,* Husband was present at the hearing on the motion to withdraw. Husband did not assert insufficient notice, and he advised the trial court that he did not want to postpone the trial. Therefore, the trial court did not err in granting the motion to withdraw.

■■■ As with a trial court's action on a motion to withdraw, "the grant or denial of a continuance is largely within the discretion of the trial court." *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 207 (Mo. banc 1991). "The fact that an attorney withdraws from a case does not give a party an absolute right to a continuance." *Nance v. Nance,* 880 S.W.2d 341, 345 (Mo. App. E.D.1994). This court will reverse the denial of a continuance "only in extreme cases where the party requesting the continuance is clearly free of any dereliction." *Foster v. Foster,* 149 S.W.3d 575, 578 (Mo.App. W.D.2004).

Husband claims that the trial court erred in denying a continuance because he did not have adequate time to employ other counsel due to the complexity of the litigation. In response, Wife contends that this case is similar to *Harms v. Simkin,* 322 S.W.2d 930 (Mo.App.1959). In *Harms,* after the client's first attorney withdrew, his second attorney entered an appearance and requested a continuance, which the trial court granted. *Id.* at 932. One week before trial, the client's second attorney withdrew because the client had not paid the attorney's fees. *Id.* On the day of trial, the trial court denied the client's motion for a continuance, and the client represented himself at trial. *Id.* In upholding the denial of a continuance, the *Harms* court stated:

A defendant who employs a series of lawyers without making satisfactory financial arrangements for the payment of their fees, as a result of which he is never prepared for trial, cannot depend upon the courts regularly to postpone his case on the eve of the time set for trial on the ground that his counsel has withdrawn. He has only himself to blame if he is forced to go to trial without counsel. Inevitably a day of reckoning comes. By inattention to his case a party defendant may not be permitted to impede the orderly administration of justice and then complain that the court has acted arbitrarily in holding him to the consequences of his own neglect. If the rule were otherwise, a defendant could indefinitely avoid trial, and there would be no end to the matter.

*Id.* at 934 (quotation omitted).

After Husband's first set of attorneys withdrew, his second set of attorneys entered their appearance and requested a continuance, which the trial court granted. Husband's second set of attorneys withdrew because Husband refused to sign their engagement letter and advance the fees and costs necessary for trial. On the first day of trial, the trial court denied Husband's motion for a continuance, finding that a continuance would prejudice Wife for several reasons:

many of the assets are in the exclusive control of Husband; during these proceedings Husband has sold and further encumbered property without consulting Wife; Husband received all rental income; Wife had incurred substantial attorney fees in preparation for this Trial date; Wife incurred fees in retaining a commercial appraiser and financial expert, both of which reports may have been stale if this Trial date were continued; and Wife's [sic] incurred substan-

tial fees in subpoenaing current bank records.

The trial court also found that "the matter was set for trial numerous times before it was finally heard" and that several of the continuances were at Husband's request or due to his failure to disclose assets or provide discovery. Like the client in *Harms,* Husband may not indefinitely avoid trial by failing to pay his attorneys or otherwise delaying the case. The trial court did not err in denying Husband's motion for a continuance. Point denied.

**B. Valuation and Division of Property**

█ In his second point on appeal, Husband alleges that the trial court erred when it relied on Wife's testimony and the appraisals Wife introduced in support of her testimony in its valuation of the real estate. Specifically, Husband asserts that Wife was not competent to testify regarding the value of real estate she did not own and that Wife's appraisals were "stale." Wife maintains that Husband neither objected to the evidence nor presented any other evidence of the property values.

█ Because Husband failed to object to both Wife's testimony and the trial court's admission of the appraisals, he has failed to preserve the issue for appellate review. *See Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 133 (Mo. banc 2007). Although we may review an unpreserved claim for plain error, "[w]e rarely review for plain error in civil cases." *Smith v. White,* 114 S.W.3d 407, 412 (Mo.App. W.D. 2003). Husband has not requested this court to review his claims for plain error. Therefore, we decline to do so. Point denied.

█ In his third point on appeal, Husband claims the trial court erred in determining that the Residence was Wife's separate property. Specifically, Husband argues that because the LLC quitclaimed the Residence to Husband and Wife in 1999, the LLC's transfer of the Residence to Wife in 2004 was not valid. Wife counters that (1) the LLC's quitclaim deed to Husband and Wife was never recorded; (2) the LLC's quitclaim deed to Wife in 2004 was properly recorded; and (3) Husband was the grantor in both transactions. Moreover, Wife argues that Husband signed a marital waiver of any interest in the property and is estopped from claiming an interest in the property.

█ In a dissolution case, the trial court "shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property . . . in such proportions as the court deems just. . . ." Mo.Rev.Stat. § 452.330.1.[1] "The trial court has considerable discretion in its classification of property as marital or nonmarital." *Glenn v. Glenn,* 345 S.W.3d 320, 326 (Mo.App. S.D.2011). This court will not disturb the trial court's decision absent an abuse of discretion. *Torrey v. Torrey,* 333 S.W.3d 34, 36 (Mo.App. W.D.2010). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration." *Id.* (internal quotation omitted).

"All property acquired by either spouse subsequent to the marriage . . . is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership . . . ." Mo. Rev. Stat. § 452.330.3. A spouse may overcome this presumption by showing that the spouse acquired the property by gift. Mo.Rev.Stat. §§ 452.330.2, 452.330.3. "[W]hether or not there is a

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

valid inter vivos gift is a question of fact." *In re Marriage of Fisher,* 258 S.W.3d 852, 857 (Mo.App. S.D.2008).

The elements of a valid inter vivos gift of real property are: (1) the grantor's present intention to make a gift to the grantee; (2) the grantor's execution and delivery to the grantee of a deed or other proper written instrument evidencing the gift; and (3) the grantee's acceptance of the deed or instrument. *Wills v. Whitlock,* 139 S.W.3d 643, 653 (Mo.App. W.D.2004). "[W]here a husband pays the consideration and causes the transfer [of real estate] to be made to his wife, the rebuttable presumption is that he intended to make a gift or a provision for her benefit." *Duncan v. Rayfield,* 698 S.W.2d 876, 879 (Mo.App. S.D.1985). In such cases, "the husband has the burden to show by clear and convincing evidence that he did not intend to make a gift to or provision for his wife." *Tracy v. Tracy,* 791 S.W.2d 924, 926 (Mo.App. S.D.1990). "Parol evidence is admissible to show the parties' intent, although the husband's declaration that he intended no settlement upon or gift to the wife, standing alone, is entitled to little weight." *Schroeder v. Schroeder,* 924 S.W.2d 22, 28 (Mo.App. E.D.1996). "[T]he trial court may look behind the deed for the property acquired during the marriage to determine if the property was acquired by gift to either spouse and so exempt from division." *In re Marriage of Schulz,* 583 S.W.2d 735, 742 (Mo.App. E.D.1979).

Wife testified that Husband executed the 1999 deed to Husband and Wife approximately fourteen days prior to the parties' marriage. Wife testified that Husband "was leaving to go out of town and was running out of time before our marriage. So he did this and he gave it to a friend to keep in case something happened to him." Wife testified that the deed was never recorded. Wife testified that in 2004, Husband executed the deed transferring the Residence from the LLC to Wife and the Assent and Waiver, both of which were recorded. On cross-examination, Husband asked Wife: "Was not the [2004 quitclaim] deed as well as the waiver of marital rights done so that we could get a loan that would pay off the commercial lien that I had on the [Residence]?" Wife answered: "We did obtain a new loan at that time or I obtained a new loan at that time." However, Husband did not present any evidence that he intended the transfer to be temporary or that he did not intend for Wife to own the Residence.[2]

In analyzing whether Husband gifted the Residence to Wife, the trial court stated: "Wife testified that Husband gifted her the property. Husband presented no

---

**2.** A husband may make a valid gift to a wife even where a husband implies that business purposes motivated him to convey the property to his wife. In *McDonough v. McDonough,* 762 S.W.2d 827 (Mo.App. E.D.1988), the husband transferred certain corporate shares to his wife during their marriage. *Id.* at 829. In their dissolution case, the trial court awarded the wife's shares to the husband. *Id.* On appeal, this court reviewed the husband's transfer of the shares to his wife and concluded that the husband "intended the transfer to be in that form" and that "[t]here was no misunderstanding or mistake." *Id.* The court held that the husband had gifted the shares to his wife. *Id.* The court found unpersuasive the husband's argument that he titled the shares in the wife's name for estate-planning and business purposes rather than for the purpose of making a gift. *Id. See also Montgomery v. Montgomery,* 18 S.W.3d 121, 124 (Mo.App. S.D.2000) (concluding that the husband's testimony that he titled a bank account in the wife's name to avoid probate was entitled to little weight and "[did] not corroborate Husband's intent to retain the funds as his separate property"); *Moseley v. Moseley,* 795 S.W.2d 464, 468 (Mo.App. E.D.1990) ("The trial court was not bound to accept husband's claim he merely intended the Deed of Gift to be an estate planning technique or a business transfer, not a true gift.").

evidence to the contrary." The trial court found that the LLC quitclaimed the Residence to Wife in 2004 and that Husband executed the Assent and Waiver, as evidenced by his notarized signature on the document. The trial court found that "Husband caused title to the property to be transferred to Wife, and Husband failed to provide the Court with clear and convincing evidence that he did not intend to make [a] gift to or provision for his wife." Accordingly, the trial court determined that the Residence was Wife's separate property. Although the trial court did not make specific findings regarding each of the elements of a gift, the record sufficiently established that: (1) Husband intended to gift Wife the Residence; (2) Husband executed the 2004 deed and the Assent and Waiver to Wife as grantee, which evidenced the gift; and (3) Wife accepted the gift.

Husband does not contest the existence of any of the requisite elements of a gift except the second element, the grantor's execution and delivery to the grantee of a deed or other proper written instrument evidencing the gift. Husband alleges that because the LLC quitclaimed the Residence to Husband and Wife by the unrecorded 1999 deed, the LLC's transfer to Wife in 2004 was not valid, and that Husband never executed a deed to Wife in his individual capacity to evidence the gift. In support of his position that the LLC's quitclaim of the Residence to Wife is not valid, Husband relies on *Boogher v. Neece*, 75 Mo. 383 (1882). *Boogher* is distinguishable. There, the plaintiff and the defendant both claimed title to the same parcel under two deeds from the same grantor to two different grantees. *Id.* at 384. The first deed was not recorded until years after the second deed was recorded. *Id.* *Boogher* provides that an unrecorded deed is valid only between the parties and for those having actual notice of the deed. *Id.*

at 386; *see also* Mo.Rev.Stat. § 442.400. *Boogher* did not concern a gift from one spouse to another. Additionally, there was no indication in *Boogher* that the grantor of both deeds and the grantee of the first deed were the same party.

This case is more analogous to *McCoy v. McCoy* than *Boogher*. In *McCoy*, the parties used the proceeds from the sale of the wife's separate property to purchase a real estate parcel jointly. *McCoy v. McCoy*, 159 S.W.3d 473, 476 (Mo.App. W.D.2005). The wife testified that she did not give anyone instructions on how to title the property, but the evidence demonstrated that she saw the deed before closing on the purchase "and was aware that she and Husband were shown as joint owners." *Id.* The trial court concluded that the parcel was the wife's separate property because the parties never requested or directed the joint titling of the parcel. *Id.* On appeal, the husband argued that the wife failed to meet her burden of proving by clear and convincing evidence that she did not intend to gift the parcel to her husband. *Id.* The court held that the wife's "mere testimony that she gave no instructions on the titling [was] insufficient to prove her intent." *Id.* at 477. The court stated: "By giving no instructions, Wife effectively allowed the joint titling and then did nothing to indicate any intent to maintain the assets as her separate property." *Id.* Accordingly, the court held that the wife failed to present clear and convincing evidence to overcome the presumption that she gifted the property to her husband. *Id.*

Here, the trial court found that the LLC, the grantor of both deeds, "is 100% Husband." On the LLC's behalf, Husband executed the 1999 deed to Husband and Wife, but he never recorded it. Five years later, he executed the 2004 deed to Wife alone on the LLC's behalf. As in *McCoy*,

Husband allowed the titling of the Residence in Wife's name, and the record is devoid of evidence establishing that Husband thereafter demonstrated his intent to maintain an interest in the property. Husband failed to present clear and convincing evidence to overcome the presumption that he gifted the Residence to Wife.

Moreover, the Assent and Waiver is unambiguous. The Assent and Waiver provides in relevant part that: "I hereby waive any right to make any legal or equitable claim against [the Residence] now or at any future time, according to and as required by § 474.150...."[3] By signing it, Husband expressly waived any legal or equitable claim against the Residence. Husband provides no authority for his position that, despite having executed the waiver, he retains an interest in the Residence.[4] Thus, Husband has failed to demonstrate that the trial court abused its discretion in determining that the Residence was Wife's separate property.

We note that even if the trial court had erred in its characterization of the Residence as Wife's separate property, the error would not require reversal if the trial court's division of property was nonetheless fair. In *Deck v. Deck*, the evidence demonstrated that the husband had intended to give a parcel of real estate to the wife, but the husband "did not execute any documents to convey the property to wife." 64 S.W.3d 870, 874 (Mo.App. E.D.2002). The trial court awarded the parcel to the wife as her separate property. *Id.* at 873. On appeal, this court concluded that although the husband intended to make a gift, he failed to take all the necessary steps because he did not execute any documents to convey the property, and the trial court therefore erred in characterizing the property as the wife's separate property. *Id.* at 874. However, the court recognized that the trial court intended to award the property to the wife and that the "mere erroneous designation of property as nonmarital, where the division is nonetheless fair, does not require reversal." *Id.* The *Deck* court therefore "[gave] effect to the court's intended distribution" and held that the trial court did not err in awarding the property to the wife. *Id.* at 874–75. Here, the trial court intended to award the Residence to Wife as part of its division of property, and even if the trial court erred in its characterization of the Residence, Husband has not asserted that reversal is required because the division of property was unfair. Point denied.

■ In his fourth point on appeal, Husband asserts that the trial court erred in determining that: (1) Husband owned 100% of the LLC and his interest was marital; and (2) his retirement account was marital. Specifically, Husband argues that he only owned a 52% interest in the LLC, that the interest was nonmarital because he acquired it before the marriage, and that he did not transmute his interest by commingling LLC and marital funds. Husband contends that "there is a strong likelihood" that a portion of his retirement account was nonmarital. Wife counters that Husband controlled the LLC and commingled its funds with marital funds and that Husband deposited marital funds into his retirement account monthly.

3. Section 474.150 provides in part that a real estate conveyance made without a spouse's written consent is "deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse." Mo.Rev.Stat. § 474.150.2.

4. Under certain circumstances, a marital waiver may be invalid. *See Bell v. Bell*, 360 S.W.3d 270, 279–80 (Mo.App. S.D.2011). However, Husband does not claim that his waiver is invalid.

"Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property." Mo.Rev.Stat. § 452.330.4. However, commingling transmutes non-marital property into marital property if the owner intended to convert it to marital property. *Goodwin v. Goodwin*, 263 S.W.3d 703, 706 (Mo.App. W.D.2008).

Husband argues that his use of LLC funds for personal purposes does not constitute a commingling of funds or an intent to transmute his LLC interest because "[a] party is allowed to live off his or her separate property." In support of his position, Husband relies on a footnote in *Tauk v. Tauk*, 109 S.W.3d 188 (Mo.App. E.D.2003). *Tauk* is inapposite. There, the court held that the trial court's award to Husband of his "medical practice" included his interest in a limited liability company but that it was unclear whether the award included his interest in the company's bank account. *Id.* at 189. In a footnote, the *Tauk* court stated that "[i]f the money in the LLC account is deemed to be the retained earnings of the LLC, then it would be the LLC's property—not Husband's or Wife's—and not under the dissolution court's control to set aside or divide." *Id.* at 189 n. 1. *Tauk* did not involve commingling of funds. Thus, *Tauk* has no bearing on whether Husband's use of LLC funds for personal purposes resulted in a transmutation of his LLC interest to marital property.[5]

Husband alleges that because the other LLC members were not parties to the litigation, the trial court improperly "reform[ed] the operating agreement" by finding that Husband owned a 100% interest instead of a 52% interest in the LLC.

Husband cites no specific language in the trial court's judgment suggesting it reformed the operating agreement and cites no legal authority to support this argument. The trial court found that the LLC "is 100% Husband" and awarded the LLC and all its assets and liabilities to Husband. Thus, the trial court found that Husband effectively owned 100% of the LLC for the purpose of valuing his interest in the LLC and its assets. The LLC and its other members did not need to be parties to the litigation for the trial court to determine that Husband's interest in the LLC was marital and to award the LLC and all its assets to Husband. *See Wisdom v. Wisdom*, 316 S.W.3d 499, 502 (Mo.App. W.D.2010) (holding that the trial court did not err in finding a corporation to be a marital asset and awarding it and all corporate assets and liabilities to the husband, even though the corporation was not a party to the action, because the trial court did not divide any corporate assets or liabilities).

In his final argument, Husband conclusorily states that "there is a strong likelihood that a portion of the retirement account was separate" because Husband was sixty-six years old and the parties were married for ten years. Husband cites no authority to support this proposition. Moreover, Husband presented no evidence at trial demonstrating what portion of the retirement account was separate property. Point denied.

### C. Maintenance

In his fifth point on appeal, Husband alleges that the trial court erred in awarding Wife temporary and future maintenance. Specifically, Husband claims that Wife abandoned her request for temporary

---

**5.** Having determined that the trial court did not err in finding that Husband's interest in the LLC was marital, we need not address Husband's argument that his interest in LLC assets acquired during the marriage was separate property.

maintenance, "the issue was res judicata," and Wife could meet her needs without future maintenance. Wife asserts that she did not abandon her request for temporary maintenance, res judicata did not bar the trial court from granting her request, and she cannot meet her needs without future maintenance until she receives the property awarded to her.

A trial court may award maintenance "if it finds that the spouse seeking it: (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for the spouse's reasonable needs; and (2) is unable to support herself or himself through appropriate employment." *Hill v. Hill,* 53 S.W.3d 114, 115 (Mo. banc 2001). "The trial court has considerable discretion in determining the appropriate amount to award for maintenance." *Rombach v. Rombach,* 867 S.W.2d 500, 505 (Mo. banc 1993).

Husband argues that Wife abandoned her request for temporary maintenance because she did not mention it in her TRO motion. In support of his argument, Husband relies on *Johnson v. GMAC Mortgage Corporation,* 162 S.W.3d 110 (Mo. App. W.D.2005). *Johnson* is distinguishable because there, the trial court dismissed certain claims in the plaintiff's petition with leave to amend, and the plaintiff subsequently filed an amended petition. *Id.* at 114. The *Johnson* court held that by filing the amended petition, the plaintiff abandoned his earlier petition. *Id.* at 115–16. Here, Husband mischaracterizes Wife's TRO motion as an amendment to her PDL Motion. In the TRO motion, Wife sought to prohibit Husband from disposing of proceeds from the imminent sale of certain real estate. Wife's TRO motion did not operate to amend the PDL Motion.

Husband also maintains that res judicata prevented the trial court from considering temporary maintenance after it entered the TRO Order, citing *Dardick v. Dardick,* 661 S.W.2d 538 (Mo.App. E.D. 1983). *Dardick* is inapposite. In that case, the court held that because the trial court awarded the wife temporary maintenance in response to her motion pendente lite, the issue was res judicata for her second and third motions pendente lite seeking temporary maintenance absent changed circumstances. *Id.* at 543. Here, Wife filed only one PDL Motion requesting temporary maintenance. Neither Wife's TRO motion nor the TRO Order addressed the issue. Thus, res judicata did not bar the trial court from later ruling on the PDL Motion and ordering Husband to pay Wife temporary maintenance.

Finally, Husband contends that Wife does not need future maintenance "in light of all the items awarded to Wife." Husband cites no supporting authority, and his argument ignores the trial court's findings regarding future maintenance. The trial court found, as Husband alleges, that the property and payments awarded to Wife would meet her reasonable needs. However, the trial court found that Wife would not receive the property and payments immediately. The trial court ordered Husband to pay Wife future maintenance only until she received the property and payments awarded to her. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.